MAINE SUPREME JUDICIAL COURT                                       Reporter of Decisions
Decision:     2014 ME 46
Docket:       Was-13-42
Argued:      November 19, 2013
Decided:     March 20, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

# JOHN S. ZABLOTNY

v.

# STATE BOARD OF NURSING

JABAR, J.

[¶1]  John S. Zablotny appeals from a judgment of the District Court (Machias, *Romei, J.*) affirming the State Board of Nursing's (Board) decision to revoke his professional nursing license for two years.  On appeal, Zablotny's primary contention is that the court erred in the manner in which it undertook, in accordance with 10 M.R.S. § 8003(5) (2013), a "de novo judicial review" of the Board's decision because it (1) deferred to the Board's factual findings and (2) denied the parties the opportunity to re-present evidence that had previously been submitted to the Board.  Because we agree with Zablotny that the court erred in its interpretation and application of "de novo judicial review," we vacate the judgment and remand for further proceedings consistent with this opinion.[1]

---

[1]  In addition to Zablotny's primary contention, he raises several additional arguments on appeal that he asserts requires vacating the trial court's judgment.  Because we agree with his primary contention and vacate on that ground, we do not address the merits of Zablotny's remaining arguments.

## I. BACKGROUND

[¶2]   The record contains the following facts supporting the Board's findings.   *See Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 2, 843 A.2d 18.   John Zablotny was employed as a registered nurse at the Down East Community Hospital in Machias.   On December 27, 2007, a sixty-one-year-old patient was taken by ambulance to that hospital, where he was admitted to its emergency room complaining of severe abdominal pain.   Over the next five days, the patient was given regular doses of several different medications to try to alleviate his pain.   Despite efforts to diagnose his condition and alleviate his pain, the patient's pain persisted and his physical condition worsened.

[¶3]   On January 1, 2008, a snowstorm hit the region, becoming gradually worse as the day progressed.   That morning, the patient was in severe pain and expressed to his attending nurses that he would "rather die" than live.   Throughout the day, the patient became increasingly agitated and repeatedly rang hospital staff for additional pain medication.   Later that afternoon, the patient expressed his desire to be discharged against medical advice, but hospital staff ultimately dissuaded him from doing so.

[¶4]   That evening, at about 7:00 p.m., Zablotny began his shift as nurse supervisor.   As nurse supervisor, Zablotny was charged with overseeing the overall operation of the nursing staff and attending to his own nursing duties.   At the

beginning of his shift, Zablotny met with the daytime supervisor, who informed him of the patient's deteriorating condition and increasing dependency on pain medication. Because the patient's family had gone home for the day, the daytime supervisor urged Zablotny to continue discouraging the patient from leaving if he requested a discharge.

[¶5] At about 8:00 p.m., Zablotny was informed by another nurse that the patient wanted to be discharged. After notifying the patient's physician of his request to leave, Zablotny met with the patient. Following Zablotny's conversation with the patient, the patient signed the forms necessary to be discharged against medical advice. About twenty minutes later, Zablotny walked the patient to the clerk's desk and pointed him towards the exit. The patient then departed unescorted into blizzard-like conditions without any confirmed transportation. The next day, the police found the patient's body less than 500 feet from the hospital's entrance. Shortly thereafter, the hospital terminated Zablotny's employment.

[¶6] In February 2009, the patient's sister filed a complaint against Zablotny with the Board. Pursuant to its authority under 10 M.R.S. § 8003-A (2013) and 32 M.R.S. § 2105-A(1-A) (2013), the Board initiated an investigation. About a year later, the Board informed Zablotny that it would be conducting an adjudicatory hearing to determine if grounds existed for disciplinary action against his license. *See* 10 M.R.S. § 8003(5) & 32 M.R.S. § 2105-A(1-A)(D) (2013).

4

[¶7]   In April and May 2010, the Board conducted a two-day disciplinary hearing.   During the hearing, seventeen witnesses, including members of the hospital staff, law enforcement personnel, and Zablotny, testified as to the events that transpired.   In June 2010, the Board issued its decision, finding that Zablotny violated several statutes and Board rules.   As a result of these violations, the Board revoked Zablotny's professional nursing license for two years, fined him $1,500, and ordered him to pay part of the costs of the disciplinary hearing.   *See* 10 M.R.S. § 8003(5)(A-1)(2-A)-(4).

[¶8]   Following the Board's action, Zablotny filed, pursuant to 10 M.R.S. § 8003(5), a petition for de novo judicial review in the District Court.   Zablotny's petition urged the court to conduct a full evidentiary hearing, during which the District Court would not be required to give deference to the Board's findings of fact.   In combination with his petition, Zablotny filed a motion for additional evidence.   In the motion, Zablotny requested that the court rehear "all of the witnesses who testified before the Board" so that it could independently weigh the evidence and make its own credibility determinations during its de novo review.

[¶9]   At the court's request, the parties extensively briefed what they considered to be the court's duties in performing "de novo judicial review" pursuant to section 8003(5).   In May 2011, the court agreed with Zablotny's interpretation, ruling that it was "of the view that de novo means de novo,

essentially," and therefore concluded that it would be required to conduct a "de novo hearing." However, after the Board moved the court to reconsider its ruling, the court retracted its initial decision and in doing so determined that "de novo judicial review" precluded it from substituting its judgment for the Board's on questions of fact. The court concluded that, as a result, it would not rehear the evidence presented to the Board but would instead base its review "solely upon the [agency] record filed with the Court."

[¶10]   In January 2013, the court, after finding "competent evidence to support the Board's findings," entered a judgment affirming the Board's decision to revoke Zablotny's license. The court concluded that "the violations found by the Board warranted a revocation of [Zablotny's] nursing license." After judgment was entered, Zablotny timely filed this appeal. *See* M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶11]   This case requires us to interpret the meaning of the phrase "de novo judicial review" as used in 10 M.R.S. § 8003(5). Before doing so, we address two related, but seemingly contradictory, statutes setting forth the procedural requirements necessary for the Board to revoke a nurse's professional license: 10 M.R.S. § 8003(5) and 32 M.R.S. § 2105-A(1-A)(E) (2013). We take this opportunity to clarify the relationship between the revocation proceedings pursuant to 10 M.R.S. § 8003(5), which apply generally to professional licensing boards,

6

and the proceedings described in 32 M.R.S. § 2105-A(1-A)(E), which apply specifically to the nursing profession.

A.    Procedures Available to Revoke Professional Licenses

[¶12]   There are two statutes that the Board of Nursing could use to take disciplinary action against its licensees, namely 10 M.R.S. § 8003(5) and 32 M.R.S § 2105-A.   Title 10 M.R.S. §§ 8001-8011 (2013) governs the regulation of professional licensing in general, and specifically includes within its reach the Board of Nursing.  *See* 10 M.R.S. § 8001-A(5).  Title 10 grants professional boards certain enumerated powers, including the power to suspend and revoke the licenses of its members.  *Id.* § 8003(5)(A-1)(2), (2-A).  The power to revoke licenses under section 8003(5) is not without limitations and can "be precluded by language of denial" in a board's more individualized governing statute.   *Id.* § 8003(5). Nonetheless, when a board has the power to revoke its members' licenses and chooses to do so, section 8003(5) requires that such decisions be "subject to . . . de novo judicial review exclusively in [the] District Court."  *Id.*  The meaning of this provision is the issue before us.

[¶13]   Similar to section 8003(5), the Board's own governing statute provides the Board with the ability to revoke its members' licenses.  32 M.R.S. § 2105-A(1-A)(E).  However, unlike Title 10, Title 32 states that the Board must "file a complaint in the District Court" if the Board concludes that suspension or

revocation of a license is warranted. *Id.*; *see also* M.R. Civ. P. 80G. Once a complaint has been filed, Title 32 provides that the procedures set forth in 4 M.R.S. § 184 (2013) will govern. 32 M.R.S. § 2105-A(1-A)(E). According to section 184, licensees are afforded the opportunity to have a hearing, to call witnesses, and to present evidence to the District Court. *See also* M.R. Civ. P. 80G(d) (providing that trials involving the revocation of a professional license are governed by the Maine Rules of Civil Procedure).

[¶14] At first blush, the procedures for revocation proceedings pursuant to section 8003(5) of Title 10 and section 2105-A of Title 32 appear to be inconsistent. One provision affords the Board the authority to revoke licenses, which is then subject to "de novo judicial review," *see* 10 M.R.S. § 8003(5), while the other requires the Board to file a complaint in the District Court, *see* 32 M.R.S. § 2105-A(1-A)(E). We faced an almost identical issue with respect to section 8003(5) and the Board of Licensure in Medicine's governing statute in *Michalowski v. Board of Licensure in Medicine*, 2012 ME 134, ¶¶ 12-25, 58 A.3d 1074. In *Michalowski*, we concluded that the overlapping statutes provided the Board of Licensure in Medicine with two "complementary," nonconflicting methods by which it could revoke its members' licenses. *Id.* ¶ 25. These "alternative paths," we described, allowed that board to proceed either by (1) "undertaking its own administrative revocation proceeding pursuant to

8

Title 10," or (2) "by filing a petition in the District Court seeking a judicial revocation pursuant to Title 32."[2] *Id.*

[¶15] The same principle applies to the Board of Nursing's authority to revoke its members' licenses. Although the language contained in Title 32 affirmatively directs the Board to file a complaint in the District Court, it follows the phrase stating, "the board . . . *may* take any of the following actions . . . ." 32 M.R.S. § 2105-A(1-A) (emphasis added). This language does not expressly deny or reject the authority conferred on the Board by 10 M.R.S. § 8003(5). As a result, and consistent with our holding in *Michalowski*, the two provisions provide the Board with "complementary" and "alternative paths" in revoking its members' licenses. 2012 ME 134, ¶ 25, 58 A.3d 1074.

[¶16] These alternative paths allow professional boards, including the Board of Nursing, to decide which approach is appropriate depending on the circumstances. *See id.* ¶ 19. If, after its initial investigation, the Board is uncertain

---

[2] Since our decision in *Michalowski v. Board of Licensure in Medicine*, 2012 ME 134, 58 A.3d 1074, the Legislature has amended the Board of Licensure in Medicine's governing statute. *See* P.L. 2013, ch. 355, §§ 8-12 (effective Oct. 9, 2013) (codified at 32 M.R.S. § 3282-A (2013)). In doing so, the Legislature repealed the requirement that the Board of Licensure in Medicine file a complaint in the District Court upon a finding that a suspension or revocation was warranted. *Id.* § 8; *see Michalowski*, 2012 ME 134, ¶ 15, 58 A.3d 1074 (providing now superseded language of statute). As a result, the Board of Licensure in Medicine has only one path now to revoke its members' licenses, which is provided by 10 M.R.S. § 8003(5)(A-1)(2-A) (2013).

Despite this change, because the Legislature has not similarly repealed the Board of Nursing's obligations to file a complaint in the District Court, *see* 32 M.R.S. § 2105-A(1-A)(E) (2013), we still consider our interpretation of the interplay between Title 10 and Title 32 that we undertook in *Michalowski* to be controlling in this case. 2012 ME 134, ¶ 25, 58 A.3d 1074.

as to what, if any, sanction to impose, it may choose to hold its own administrative disciplinary hearing, and, upon hearing the evidence presented, decide which disciplinary action is warranted. *See id.*; *see also* 10 M.R.S. § 8003(5). Alternatively, if the Board believes after its initial investigation that a licensee's conduct rises to a level that is undoubtedly worthy of license revocation, the Board may file a complaint directly in the District Court. *See Michalowski*, 2012 ME 134, ¶ 19, 58 A.3d 1074; *see also* 32 M.R.S. § 2105-A(1-A)(E). As we explain below, if the Board chooses to proceed with an administrative disciplinary hearing, the licensee maintains the right to a hearing in the District Court if the Board chooses revocation as a sanction. *See* 10 M.R.S. § 8003(5).

B.    De Novo Judicial Review

[¶17]  We are asked to interpret the meaning of "de novo judicial review" in 10 M.R.S. § 8003(5). "We review the court's interpretation of [a statute] de novo by first examining the plain meaning of the statute . . . to give effect to the Legislature's intent." *Baker v. Farrand*, 2011 ME 91, ¶ 21, 26 A.3d 806. As a general rule, "words and phrases that are not expressly defined in a statute must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 8, 3 A.3d 390 (quotation marks omitted). Even in a plain-language reading of a statute, we will "consider the provision at issue in light of the entire

relevant statutory scheme," *Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990, to interpret it in a manner to "avoid absurd, illogical, or inconsistent results," *Searle*, 2010 ME 89, ¶ 8, 3 A.3d 390 (quotation marks omitted).

[¶18]  The use of interpretive aids is necessary when the plain language of the statute is ambiguous.  *Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 12, 967 A.2d 690; *Michalowski*, 2012 ME 134, ¶ 24 n.6, 58 A.3d 1074.  Statutory language is considered ambiguous if it is "reasonably susceptible [to] different interpretations."  *Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 17, 914 A.2d 1116 (quotation marks omitted).  Only then may we "look beyond the words of the statute to its history [and] the policy behind it."  *Lewiston Raceway, Inc. v. Me. State Harness Racing Comm'n*, 593 A.2d 663, 665 (Me. 1991).

1.    Plain Language

[¶19]  Title 10 M.R.S. § 8003(5) provides in relevant part,

Any nonconsensual disciplinary action taken under authority of this subsection may be imposed only after a hearing conforming to the requirements of Title 5, chapter 375, subchapter 4,[3] and, except for revocation actions, is subject to judicial review exclusively in the Superior Court in accordance with Title 5, chapter 375, subchapter 7.[4]

---

[3]  *See* 5 M.R.S. §§ 9051-9064 (2013) (adjudicatory hearing provisions of the Maine Administrative Procedure Act).

[4]  *See* 5 M.R.S. §§ 11001-11008 (2013) (judicial review provisions of the Maine Administrative Procedure Act).

Any nonconsensual revocation of an occupational or professional license taken under authority of this subsection is subject to, upon appeal within the time frames provided in Title 5, section 11002, subsection 3,[5] *de novo judicial review exclusively in District Court.* Rules adopted to govern judicial appeals from agency action apply to cases brought under this section.

(Emphasis added.)

[¶20]   As evidenced by the plain language of section 8003(5), the Legislature distinguishes revocations of professional licenses from all other disciplinary actions in three ways.   First, the District Court, rather than the Superior Court, has jurisdiction to review the Board's revocation decision. *See id*.; *Michalowski*, 2012 ME 134, ¶¶ 26-27, 58 A.3d 1074.   Second, although all "nonconsensual disciplinary action[s]" are "subject to judicial review," only revocations of professional licenses are "subject to . . . *de novo judicial review*." 10 M.R.S. § 8003(5) (emphasis added).   Third, although "judicial review" of nonconsensual disciplinary actions other than revocations must be conducted "in accordance with Title 5, chapter 375, subchapter 7," section 8003(5) provides that an appeal subject to de novo judicial review need only comply with Title 5's

---

[5]  Title 5 M.R.S. § 11002(3) (2013) provides:

> **3.  Petition filed.**  The petition for review shall be filed within 30 days after receipt of notice if taken by a party to the proceeding of which review is sought.  Any other person aggrieved shall have 40 days from the date the decision was rendered to petition for review.  If the review sought is from an agency's failure or refusal to act, the petition for review shall be filed within 6 months of the expiration of the time within which the action should reasonably have occurred.

12

requirement that the appeal be filed "within the time frames provided in [5 M.R.S. § 11002(3)]."[6]

[¶21]  At the outset, it is clear from the plain language of section 8003(5) that the Legislature intended for "judicial review" to be based on the record previously presented to the agency for all disciplinary actions other than revocations.  Specifically, section 8003(5) provides that, in undertaking "judicial review," the Superior Court will be governed by the procedures set forth in the judicial review provisions of the Maine Administrative Procedure Act.  *See* 5 M.R.S. §§ 11001-11008 (2013).  Accordingly, like most agency appeals, the Superior Court generally limits its review to the agency record; defers to the agency's findings of fact; and either affirms, remands, reverses, or modifies the

---

[6]  The last sentence of 10 M.R.S. § 8003(5) (2013) states, "Rules adopted to govern judicial appeals from agency action apply to cases brought under this section," which is in reference to M.R. Civ. P. 80C. Moreover, Rule 80C states that it governs "review[s] of final agency action . . . brought in the . . . District Court to review disciplinary decisions of . . . licensing boards . . . under . . . 10 M.R.S.A. § 8003." As both 10 M.R.S. § 8003(5) and M.R. Civ. P. 80C indicate, the District Court, in conducting "de novo judicial review," will be guided by Rule 80C's procedural rules at least in some instances.

To the extent, however, that the provisions of Rule 80C are inconsistent with section 8003(5), "the statute must prevail." *Serv. & Erection Co. v. State Tax Assessor*, 684 A.2d 1, 1-2 (Me. 1996). *See* M.R. Civ. P. 80C(a) (stating that Rule 80C governs, "except to the extent inconsistent with the provisions of a statute."). Since we interpret "de novo judicial review" to require a full hearing on both the facts and the law—a procedure that is not recognized by Rule 80C as currently constituted—Rule 80C does not provide the District Court with guidance in undertaking de novo judicial review pursuant to section 8003(5). As we have previously indicated, when the reviewing court "functions as the *forum of origin* for a determination of both facts and law," certain requirements of Rule 80C "are inapplicable to the proceedings before it." *Serv. & Erection Co.*, 684 A.2d at 2. Thus, to the extent that either Rule 80C's provisions are inconsistent or inapplicable, those provisions should be disregarded by the District Court when conducting de novo judicial review.

licensing board's decision based on several statutorily delineated grounds. *See id.* §§ 11006(1), 11007(3)-(4).

[¶22] In comparison, the meaning of the phrase "de novo judicial review" is not as easily gleaned from either its use in section 8003(5) or our prior case law. Although we have stated that a "hearing de novo" requires fact-finders "to undertake a *de novo review*, take evidence, make factual findings, and apply the applicable statutory . . . provisions entirely independent from the [Board's previous] decision," *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶¶ 8-9, 15, 868 A.2d 161 (quotation marks omitted), it is unclear if the Legislature intended for those requirements to apply when a court conducts its "de novo judicial review." Moreover, although other courts have been called upon to consider the scope of "de novo judicial review," their interpretations have been somewhat inconsistent. *Compare Jamison v. Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 415 (Mo. 2007) (explaining that "*de novo* judicial review" requires a trial court to "base its decision on the evidence presented in the trial court and not merely review the record before the [administrative agency]"), *with Tenn. Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 (Tenn. 2005) (stating that a "statute requiring de novo judicial review means a new hearing . . . based upon the administrative record and any additional or supplemental evidence

which either party wishes to adduce relevant to any issue" (quotation marks omitted)).

[¶23] Thus, it is unclear to what extent "de novo judicial review," as used in section 8003(5), requires the court to hold a hearing. This uncertainty includes whether the scope of that hearing requires the court to take evidence anew, even if that evidence was previously presented to the agency, or whether the court is confined to reviewing the administrative record, supplemented only by new evidence never before presented to the agency. Because the statute is "reasonably susceptible [to] different interpretations," *Batchelder*, 2007 ME 17, ¶ 17, 914 A.2d 1116 (quotation marks omitted), we look to "indicia of legislative intent such as the statute's history and its underlying policy" to ascertain and effectuate the intent of the Legislature. *Michalowski*, 2012 ME 134, ¶ 24 n.6, 58 A.3d 1074 (quotation marks omitted).

2. Legislative History

[¶24] In February 2001, the Department of Professional and Financial Regulation submitted a proposed amendment to 10 M.R.S. § 8003(5) that would grant professional licensing boards the power to revoke their members' licenses. *See* L.D. 487, § 1 (120th Legis. 2001). In its original form, the bill provided that "any nonconsensual disciplinary action" sanctioned by a professional licensing

board, including revocations, would be subject to judicial review in the Superior Court. *Id.*

[¶25] A committee hearing was held on the proposed bill and written testimony was submitted, including written testimony from the Maine Medical Association. *Hearing on L.D. 487 Before the Joint Standing Comm. on Bus. & Econ. Dev.*, 120th Legis. (2001) (statement of Andrew MacLean on behalf of Maine Medical Association). In part, the MMA voiced concern over L.D. 487 granting agencies the power to permanently revoke professional licenses without requiring decisions of such heavy consequence to be made by a court. *Id.* Because agency revocation hearings were less formal than judicial proceedings, the MMA feared that the proposed bill would cause licensees to lose significant procedural protections. *Id.* Furthermore, the MMA was concerned that L.D. 487 limited a licensee's appeal rights because it did not give the licensee the opportunity to have a "*new trial.*" *Id.* Because of these concerns and the property interests at stake, the MMA requested that "*the standard of review on appeal* [*be*] *'de novo,' meaning that the court rehears the evidence and redecides the case.*" *Id.*

[¶26] After that committee hearing, L.D. 487 was amended. *See* Comm. Amend. A to L.D. 487, No. H-206 (120th Legis. 2001). Of significance, the committee modified the bill to provide that "nonconsensual revocation[s] . . . [would be] subject to . . . de novo judicial review." *Id.* The committee noted that

the bill had been amended to allow licensees whose licenses had been revoked the opportunity to "be heard de novo . . . in the District Court." Comm. Amend. A to L.D. 487, No. H-206, Summary (120th Legis. 2001). L.D. 487 was enacted, effective in September 2001, amending section 8003(5) to grant professional boards the power to revoke its members' licenses and affording licensees the right to obtain "de novo judicial review . . . in District Court." *See* P.L. 2001, ch. 167, § 1 (effective Sept. 21, 2001) (codified as subsequently amended at 10 M.R.S. § 8003(5) (2013)).[7]

[¶27] From the changes made to L.D. 487, we conclude that the Legislature intended for the parties to "be heard de novo" when the District Court performs its "de novo judicial review." In conducting such review, the fact-finder "does not examine the evidence presented to the decision maker or tribunal below," but instead "looks at the substantive issues afresh, undertakes its own credibility determinations, evaluates the evidence presented, and draws its own conclusions." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7 & n.3, 757 A.2d 773; *see also Perry Equip. Co. v. Marine Trading & Trans., Inc.*, 390 A.2d 1110, 1111 (Me. 1978) (per curium) ("The availability of a hearing de novo . . . clearly grants an appellant the right to have the presiding Justice use his independent judgment in

---

[7] Title 10 M.R.S. § 8003(5) has since been amended, though the amendments are not relevant in the present case. *See* P.L. 2007, ch. 402, § C-2 (effective Sept. 20, 2007); P.L. 2011, ch. 286, § B-5 (effective Sept. 28, 2011).

ruling on the merits of the case."). Construed in this manner, we conclude that the procedural safeguards afforded to Zablotny pursuant to 10 M.R.S. § 8003(5) are in harmony with those that could have been available to him if the Board had proceeded under 32 M.R.S. § 2105-A(1-A)(E). *See Michalowski*, 2012 ME 134, ¶ 12, 58 A.3d 1074 (stating that when "two statutes deal with the same subject matter," we construe the two statutes "in harmony with each other, if possible.").

[¶28] Thus, with this interpretation of section 8003(5) clarified, we conclude that the trial court's original determination was correct—it was required to hold a de novo hearing. As a result, the trial court's ultimate interpretation of the requirements necessary in conducting "de novo judicial review," 10 M.R.S. § 8003(5), was erroneous, as was its denial of Zablotny's motion to re-present evidence presented to the Board.

[¶29] On remand, the District Court shall evaluate both the factual and legal issues afresh and make its own independent, nondeferential decision. *See Stewart*, 2000 ME 157, ¶ 7 & n.3, 757 A.2d 773. This obligates the court to hear the evidence presented, independently evaluate the testimony offered, make its own credibility determinations, and reach its own decision regarding the revocation. In doing so, the court will afford licensees and the public the necessary procedural safeguards that the Legislature intended.

The entry is:

> Judgment vacated. Remanded to the District Court for proceedings consistent with this opinion.

---

**On the briefs:**

Joseph M. Baldacci, Esq., Law Office of Joseph M. Baldacci, Bangor, for appellant John S. Zablotny

Janet T. Mills, Attorney General, and Andrew L. Black, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee State Board of Nursing

**At oral argument:**

Joseph M. Baldacci, Esq., for appellant John S. Zablotny

Andrew L. Black, Asst. Atty. Gen., for appellee State Board of Nursing