MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 29
Docket:       Was-16-33
Argued:       October 27, 2016
Decided:      February 14, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

JOHN S. ZABLOTNY

v.

STATE BOARD OF NURSING

ALEXANDER, J.

[¶1]  The State Board of Nursing (Board) appeals from a judgment entered in the District Court (Machias, *D. Mitchell, J.*) concluding that John S. Zablotny had engaged in certain activities that constituted professional misconduct pursuant to 32 M.R.S. § 2105-A(2) (2016) as alleged by the Board, but also concluding that the Board had failed to prove other allegations of professional misconduct.  On appeal, the Board contends that the trial court erred when it concluded that the Board had failed to prove that Zablotny committed professional misconduct as defined in 32 M.R.S. §§ 2105-A(2)(F) and (H) when he did not fully inform the on-call physician of—or immediately notify law enforcement or the patient's emergency contact about—the

2

conditions under which a patient was leaving the Down East Community Hospital against medical advice.[1]  We affirm the trial court's judgment.

## I. CASE HISTORY

[¶2]  The tragic events that generated this case are before us on appeal for a second time.  *See Zablotny v. State Bd. of Nursing* (*Zablotny I*), 2014 ME 46, 89 A.3d 143.

[¶3]  This case arises out of the death of a patient on January 1, 2008, near the Down East Community Hospital in Machias.  Five days earlier, the patient, who was emaciated and suffered from several ailments, was admitted

---

[1]  In its appeal, the Board of Nursing cites 32 M.R.S. § 2105-A(2)(F) and (H) (2016) as the statutory grounds for discipline that were violated.  The Board's evidence and arguments suggest that another subparagraph at issue might have been section 2105-A(2)(E) (incompetence in the practice), though raising subparagraph (E) would not have led to a different result the way the evidence developed. Subparagraphs (E), (F), and (H) of the section 2105-A(2) grounds for discipline read as follows:

> **E.**  Incompetence in the practice for which the licensee is licensed. A licensee is considered incompetent in the practice if the licensee has:
>
> > **1.**  Engaged in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to a client or patient or the general public; or
> >
> > **2.**  Engaged in conduct that evidences a lack of knowledge or inability to apply principles or skills to carry out the practice for which the licensee is licensed;
>
> **F.**  Unprofessional conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed;
>
> . . . .
>
> **H.**  A violation of this chapter or a rule adopted by the board.

to the hospital with complaints of severe abdominal pain. While in the hospital, the patient was seen by physicians and several other health professionals and was treated with large doses of narcotics.

[¶4] On January 1, a physician checking on the patient had no concerns for his "medical stability" and found no "obvious etiology" for the patient's reported pain. After seeing the patient around noon, the physician left the hospital but remained on call. Later that afternoon, a nurse called the physician to inform him that the patient was in pain and requested more medication. Suspecting that the medication could be causing the patient's pain, the physician ordered a decrease in the patient's medications.

[¶5] Around 6:30 p.m., a nurse caring for the patient notified the nursing supervisor that the patient was confused and needed restraints. However, the nursing supervisor found the patient to be quiet, lucid, rational, mentally competent and in no need of restraints. The patient told the nursing supervisor that he wanted to go home, and the nursing supervisor, knowing that his family had left, told him that he would have to sign the Against Medical Advice (AMA) form. When the patient asked for the AMA form, the nursing supervisor refused based on the patient's condition and the weather.

4

[¶6] Zablotny arrived at work at 7:00 p.m. as the nursing supervisor for the evening shift. The day shift nursing supervisor reported to Zablotny her concerns about the patient and told Zablotny not to let him leave AMA, to which Zablotny responded that the patient could leave if he signed the form.

[¶7] Zablotny spoke with the patient who stated that he wanted to be discharged against medical advice. While Zablotny was in the room, the patient looked out the window and could see that the weather was an "old-fashioned Nor' Easter"—bitterly cold, windy, snowy, and stormy.

[¶8] At the time, no physician was present in the unit where the patient was admitted. Zablotny retrieved the AMA form and called the on-call physician pursuant to hospital policy. Zablotny explained to the physician that the patient wanted to leave AMA and that the patient had indicated that he intended to go to a friend's house, but Zablotny did not inform the physician of what the patient wore for clothing or that he intended to walk to the friend's house. Based on the information relayed to him by Zablotny, the physician, who had seen the patient earlier in the day, told Zablotny to "let him go" and advised Zablotny that if the patient was "a danger to himself or others, call the police."

[¶9]  The patient then signed the necessary paperwork, and at about 8:20 p.m., the patient departed the hospital on foot into blizzard-like conditions wearing only pants, a button down shirt, and moccasin-style slippers.  At approximately 8:50 p.m., Zablotny located the day shift nurse's "daily" report, which had not been properly placed in the patient's chart and contained information about suicidal comments made by the patient.  In response to that new information, Zablotny made a series of telephone calls over the next thirty-five minutes.  Zablotny called the patient's wife, who was his emergency contact, to inform her that the patient had left on his own against medical advice.  At the patient's wife's request, Zablotny called the Machias Police Department.  The next day, police found the patient's body buried beneath a foot of snow approximately 380 feet from the hospital's entrance.  He had died of hypothermia and combined opiate toxicity.

[¶10]  The Board initiated an administrative action against Zablotny pursuant to 10 M.R.S. § 8003(5) (2016) and 32 M.R.S. § 2105-A(1-A)(D) (2016).  *Zablotny I*, 2014 ME 46, ¶ 6, 89 A.3d 143.  After a hearing, the Board found that Zablotny had violated his professional duties and revoked his nursing license for two years.  *Id.* ¶ 7. Zablotny appealed the Board's decision to the District Court, seeking de novo judicial review pursuant to 10 M.R.S.

6

§ 8003(5). *Id.* ¶ 8. Reviewing the agency record, the District Court (*Romei, J.*) concluded that there was "competent evidence to support the Board's findings" and entered a judgment affirming the Board's decision to revoke Zablotny's license. *Id.* ¶¶ 9-10. Zablotny appealed the District Court's decision. *Id.* ¶ 10. On appeal, we concluded that the District Court erred in conducting an appellate-type review by relying on the Board's findings without conducting a de novo hearing. *Id.* ¶ 28. We vacated the judgment and remanded the case to the District Court for further proceedings. *Id.* ¶ 29.

[¶11] On remand, we directed that "the District Court shall evaluate both the factual and legal issues afresh and make its own independent, nondeferential decision. This obligates the court to hear the evidence presented, independently evaluate the testimony offered, make its own credibility determinations, and reach its own decision regarding the revocation." *Id.* (citation omitted).

[¶12] The District Court held a four-day hearing in May 2015. The Board presented several witnesses, including fact witnesses and expert testimony on the duties nurses owe their patients, and offered the American Nurses Association Code of Ethics with Interpretive Statements (2001).

[¶13]   In a detailed written decision, the District Court found that Zablotny had engaged in unprofessional conduct by failing to provide the patient with accurate and complete information about the risks he faced upon leaving the hospital against medical advice.  The court further found, however, that the Board had failed to prove that Zablotny had violated any standards of care for (1) failing to fully inform the on-call physician of all the conditions under which the patient was seeking to be discharged and (2) failing to immediately notify law enforcement or the patient's emergency contact of his departure.

[¶14]   In making its findings, the court particularly noted (1) the extensive contacts with the patient during the day shift; (2) the information that was not available to Zablotny when he allowed the patient to leave, including the patient's suicidal statements made during the day; (3) the physician who had seen the patient during the day told Zablotny to "let him go;" (4) the call to the Machias Police Department shortly after Zablotny became aware of the important information in the misplaced "daily" report; (5) the Board's and its expert's concessions that Zablotny lacked any authority—statutory or otherwise—to prevent the patient from leaving; and (6) the hospital's discharge policy, which did not require a nurse to contact

anyone other than the attending physician, here the physician who had said "let him go."

[¶15]  The court imposed a period of suspension of Zablotny's nursing license for the violations of professional conduct standards that the court found to have been committed.  Because the period of license suspension ordered was less than the period of suspension Zablotny had served during the *Zablotny I* proceedings, no additional suspension was actually imposed.

[¶16]  Following the Board's motion for reconsideration, the court issued an order granting the motion in part—by taking judicial notice of chapter four of the Board's rules—but denying the motion in all other respects.  On reconsideration, the court found that Zablotny had violated the Board's rules for the same reasons it had found that Zablotny committed unprofessional conduct in its original decision, but the court declined to impose further sanctions.  The Board timely appealed pursuant to M.R. Civ. P. 80C and M.R. App. P. 2(b)(3).

## II.  LEGAL ANALYSIS

[¶17]  We review directly the decision of the District Court because it is mandated to decide de novo whether any violations of professional standards have occurred and, if so, to determine whether to suspend or revoke a

professional license.  *See* 10 M.R.S. § 8003(5); *Zablotny I*, 2014 ME 46, ¶¶ 27, 29, 89 A.3d 143.

[¶18]   On review of findings of fact, we do not reexamine the record from the trial court and reach our own decision about the facts; instead, we conduct a deferential review for clear error, meaning that we will defer to the fact-finder's decision as to (1) which witnesses to believe and not believe; (2) what significance to attach to particular evidence, and (3) what inferences may or may not be drawn from the evidence.  *See Cates v. Donahue,* 2007 ME 38, ¶ 9, 916 A.2d 941; *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592; *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 9, 732 A.2d 264.

[¶19]   A party, such as the Board, that had the burden of proof on an issue at trial, can prevail when challenging a finding that the party's burden of proof has not been met only if the party demonstrates that a contrary finding is compelled by the evidence.  *St. Louis v. Wilkinson Law Offices*, 2012 ME 116, ¶ 16, 55 A.3d 443; *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79; *Kelley v. Me. Pub. Emps. Ret. Sys.,* 2009 ME 27, ¶ 16, 967 A.2d 676.

[¶20]   Seeking to avoid these deferential standards of review for challenges to findings of fact, the Board argues that it does not challenge the court's factual findings, but only the court's legal conclusions.  When a trial

court judgment or administrative law decision is based on a conclusion of law, we review the conclusion of law de novo. *Goudreau v. Pine Springs Rd. & Water, LLC*, 2012 ME 70, ¶ 11, 44 A.3d 315.

[¶21] When an act is indisputably improper or when the licensee admits the violation, a professional regulatory board does not need to present any evidence of the applicable standard to support a finding that the standard has been violated. *Balian v. Bd. of Licensure in Medicine*, 1999 ME 8, ¶ 16, 722 A.2d 364. But on the facts of this case, the Board's asserted violations of its standards are not so apparent that the undisputed facts establish the asserted violations as a matter of law.

[¶22] Despite the Board's arguments, the question of whether certain facts demonstrate violation of professional standards is a mixed question of law and fact, as demonstrated by the Board's presentation of expert testimony—fact-based evidence—seeking to demonstrate that the rules and professional standards it enforces had been violated. On review of decisions regarding application of professional standards, we interpret the meaning of the identified professional standards de novo as a matter of law, and we review for clear error the court's findings of fact to determine applicability of the professional standards. *See Bd. of Overseers of the Bar v. Warren*, 2011 ME

124, ¶ 25, 34 A.3d 1103; *Bd. of Overseers of the Bar v. Brown*, 623 A.2d 1268, 1270 (Me. 1993); *see also Dionne v. LeClerc,* 2006 ME 34, ¶ 15, 896 A.2d 923 (holding that the fact-finder has the prerogative to selectively accept or reject testimony, including expert witness testimony, even if that testimony is uncontradicted); *In re Fleming*, 431 A.2d 616, 618 (Me. 1981).

[¶23]  The Board contends that the facts found by the court establish, as a matter of law, that Zablotny committed unprofessional conduct and violated Board rules pursuant to 32 M.R.S. § 2105-A(2)(F) and (H) by (1) failing to fully inform the on-call physician of all the conditions under which the patient was seeking to be discharged and (2) failing to immediately notify law enforcement or the patient's emergency contact of his departure.

[¶24]  The District Court's findings regarding (1) the information and observations about the patient during the day shift that others knew, but Zablotny did not know, when he allowed the patient to leave, (2) the physician's "let him go" statement, (3) the timing of the call to the police, (4) the fact, apparently undisputed, that Zablotny lacked authority to prevent the patient from leaving, and (5) Zablotny's compliance with the hospital's discharge policy for an "against medical advice" discharge that required communication only with the attending physician, support the conclusion that

the District Court was not compelled, as a matter of law, to find that Zablotny violated Board rules or professional standards of care on the two issues asserted by the Board on appeal.

[¶25]  The findings of fact made by the District Court are supported by the record, and based on those findings, its conclusions regarding application of the Board rules and professional standards to the facts do not indicate any error of law.

The entry is:

Judgment affirmed.

---

Janet T. Mills, Attorney General, and Andrew L. Black, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant State Board of Nursing

Joseph M. Baldacci, Esq. (orally), and Eugene M. Sullivan, Jr., Esq., Law Office of Joseph M. Baldacci, Bangor, for appellee John S. Zablotny

Machias District Court docket number AD-2010-03
FOR CLERK REFERENCE ONLY