STATE OF MAINE                                SUPERIOR COURT
ANDROSCOGGIN, ss.                             CIVIL ACTION
                                              DOCKET NO. AP-23-05

JUN 9 '23 AM9:46
ANDRO SUPERIOR COURT

STATE OF MAINE,

        Appellee

    v.                                ORDER DENYING APPEAL

KATHLEEN O'CONNELL,

        Appellant

    The matter before the court is appellant Kathleen O'Connell's appeal of two District

Court orders in different animal welfare proceedings related to the seizure of cats from her

property.

Background

    The following facts could have been found by the District Court.

    The disputes between Ms. O'Connell and the State's Animal Welfare Program ("AWP")

go back several years. The first legal action occurred on November 5, 2019, when the AWP

executed a warrant and seized 82 of Ms. O'Connell's cats. The District Court (*Dow, J.*), in a case

docketed at CV-19-448, ordered the AWP to return these cats on September 15, 2020, after

finding that Ms. O'Connell had not violated permissible standards of care for the cats. The

District Court ordered the AWP to return the cats to Ms. O'Connell "as soon as it [could]

reasonably be arranged, consistent with the health and safety of the cats."

    The AWP began the process of returning the cats with some expediency. On October 26,

2020, the State returned several cats, and many more on November 6. After November 6, the

AWP believed that it had returned all of the cats that it could return safely, as the nine cats that it

withheld were sick and required veterinary care. Ms. O'Connell alleged, and continues to allege,

1

that the State actually withheld eighteen cats. The AWP refused to return the sick cats to Ms. O'Connell before receiving a management plan from her with provisions for their care, which Ms. O'Connell did not provide.

On June 7, 2021, Ms. O'Connell filed a Motion to Enforce in the case docketed at CV-19-448. Ms. O'Connell alleged that the AWP had failed to comply with the September 15 Order by failing to return eighteen cats. The AWP opposed the motion, arguing that it had only withheld nine cats, and that those nine sick cats had been withheld pursuant to the District Court's instruction that the cats be returned to Ms. O'Connell "consistent with the health and safety of the cats."

In January 2022, while the motion to enforce was pending, a complaint was made to the AWP regarding the animal population maintained on Ms. O'Connell's property. On or about January 10, 2022, while Ms. O'Connell and her father were in the hospital with COVID-19, Ms. O'Connell's brother, Thomas O'Connell, Jr., entered the home at 222 Ridge Road, Wales, where Ms. O'Connell lives. Mr. O'Connell was checking for frozen pipes and to make sure there was water in the tank for the furnace. Mr. O'Connell testified before the District Court that he and his wife observed the home to be in a state of "unkept squalor." When Mr. O'Connell entered the home again four days later, he found dead cats in the home. This prompted Mr. O'Connell to call animal control.

Ms. O'Connell was in the hospital for both of Mr. O'Connell's visits to the 222 Ridge Road home. Ms. O'Connell later claimed that Mr. O'Connell's entry into the home was illegal, but he testified that he had never needed permission to enter the home before, which belonged to his father. Ms. O'Connell was discharged from the hospital on January 20, 2022.

Angela Rogers, a District Humane Agent for the AWP, applied for and was granted a search warrant for 222 Ridge Road, Wales, Maine, where Ms. O'Connell lives. The search warrant was seeking "evidence of the crime of cruelty to animals, including but not limited to, any live, dead or unborn animals which have been found to be deprived of necessary sustenance, necessary medical care, proper shelter, protection from the weather and/or humanely clean conditions . . . ."

The AWP executed the search warrant on January 28, 2022. The AWP sought and was granted a second search warrant that authorized an extended search period from February 2 to February 4, 2022. The AWP seized 111 cats during the search, 33 of which were found deceased. In addition, the AWP seized 26 poultry.

On March 8, 2022, the AWP filed an Application for a Possession Order and Order to Show Cause, pursuant to 17 M.R.S. § 1021(3), which was docketed at CV-22-75. The District Court consolidated the Application for a Possession Order (CV-22-75) and the Motion to Enforce (CV-19-448). A consolidated hearing was held on April 13, April 26, and June 2, 2022. The District Court heard the Motion to Enforce on the first day, and the Application for a Possession Order on the other two days.

The District Court (*Driscoll, J.*) granted the State's Application for a Possession Order, finding that the animals in Ms. O'Connell's care "suffered from disease, dehydration, and malnourishment, and were deprived of necessary medical attention and humanely clean conditions." (Order ¶ 11.) While the District Court found that Ms. O'Connell is kind-hearted and loves these cats, it also found that she "is in denial about the condition of scores of these animals who suffered, and in many cases, died, in her care." (*Id.* ¶ 9.) The District Court ruled that Ms. O'Connell had failed to show cause why the animals should not be seized permanently or

3

disposed of humanely, as is required under 17 M.R.S. § 1021(3). Accordingly, the District Court ordered that the animals "are hereby forfeited and the applicant or other suitable person may take possession and provide for the animals or order their sale, adoption or placement." (*Id.* at order.)

The District Court also ruled on Ms. O'Connell's Motion to Enforce on the same day, granting it in part and denying it in part. The District Court held that AWP wrongly interpreted the prior order as giving it the authority to withhold the nine sick cats and ordered that they be returned. At the same time, the District Court held that Ms. O'Connell did not meet her burden of proof to establish that nine other cats had been withheld. The District Court found the witnesses for the State credible, which testified that all cats seized were returned except for the nine sick cats in dispute.

Ms. O'Connell appealed both orders to the Superior Court.

Discussion

Ms. O'Connell raises many arguments in support of her appeal. The court addresses each of the substantive arguments below, though not necessarily in the same order as Ms. O'Connell presented them in her brief.

Res Judicata

Ms. O'Connell's first substantive argument is that the District Court erred by entertaining the Application for a Possession Order, which she claims should have been barred by the District Court's September 15, 2020 order requiring AWP to return the cats seized on November 5, 2019 under the doctrine of res judicata.

"The doctrine of res judicata prevents the relitigation of matters already decided in order to promote judicial economy and efficiency, the stability of final judgments, and fairness to litigants." *Estate of Treworgy v. Comm'r, Health and Human Servs.*, 2017 ME 179, ¶ 11, 169

4

A.3d 416 (quotations and citations omitted). The doctrine consists of two components, issue preclusion and claim preclusion. *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097. The Law Court has characterized the two components of res judicata as follows:

> Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding. Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action.

*Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131. The Law Court requires that a factual determination be "essential to the judgment," meaning it "must be regarded by the court and the part[ies] as essential to a determination on the merits," before issue preclusion can apply. *Pacheco v. Libby O'Brien Kingsley & Champion, LLC*, 2022 ME 63, ¶¶ 8-9, 288 A.3d 398.

Ms. O'Connell argues that both issue preclusion and claim preclusion apply to this case. Her argument on issue preclusion is not distinguishable from her claim preclusion argument. Ms. O'Connell argues that the second proceeding brought by the State was duplicative of the first one and based not based on new conduct. The State argues that the conduct underlying the Application for a Possession Order, and the second seizure of Ms. O'Connell's cats in general, occurred after the first proceeding finished.

There is no dispute that the parties are the same in CV-22-75 as they were in CV-19-448. There is also no dispute that a valid final judgment was entered in the previous case. The applicability of res judicata therefore turns on two questions. For claim preclusion, could the AWP action in CV-22-75 have been brought during CV-19-448? For issue preclusion, were there

any factual determinations essential to the judgment in CV-19-448 that would have barred the AWP action in CV-22-75?

The State points to persuasive authority from cases involving DHS that show that res judicata does not apply to a second petition to terminate parental rights after the trial court denies the first petition, even if the alleged conduct is substantially similar, so long as the second petition is based on facts that occurred after the time period at issue in the first petition. *See In re Children of Melissa F.*, 2018 ME 110, ¶ 8, 191 A.3d 348; *see also In re Kaleb D.*, 2001 ME 55, ¶ 11, 769 A.2d 179. The court agrees that these cases are analogous. Res judicata would apply to a subsequent attempt to seize the cats based on conduct occurring within the time frame at issue in the first proceeding, but Ms. O'Connell prevailing in one proceeding does not mean that the State is permanently barred from bringing any subsequent action under 17 M.R.S. § 1021. So long as the second proceeding is based on new conduct that occurred after the time period relevant to the first proceeding, res judicata is no bar to the claim.

The complaint which triggered the AWP actions in CV-22-75 occurred after the District Court's final judgment was rendered in CV-19-448, when Ms. O'Connell's brother entered the house to check the pipes while she and her father were sick with COVID-19. The District Court was careful to restrict its analysis to facts that occurred after 2019, in many cases over Ms. O'Connell's objection. The facts at issue in CV-22-75 all stem from events which occurred after the previous case had concluded. Res Judicata does not apply.

Abuse of Discretion (CV-22-75)

Ms. O'Connell argues that the District Court's finding that her cats had "been abandoned or cruelly treated" or were "maimed, disabled, diseased, dehydrated, malnourished or injured" was clearly erroneous and not supported by substantial evidence in the record. Ms. O'Connell

6

makes this argument primarily by engaging in a lengthy relitigation of the facts before the District Court. The court's role in appellate capacity is to review factual findings for clear error and the application of law to the facts de novo, not to relitigate the facts before the District Court. *State v. Peck*, 2014 ME 74, ¶ 13, 93 A.3d 256.

Ms. O'Connell bore the burden of proof before the District Court "to show cause why the animal[s] should not be seized permanently or disposed of humanely." 17 M.R.S. § 1021(3). "On review of findings of fact, we do not reexamine the record from the trial court and reach our own decision about the facts; instead, we conduct a deferential review for clear error, meaning that we will defer to the fact-finder's decision as to (1) which witnesses to believe and not believe; (2) what significance to attach to particular evidence, and (3) what inferences may or may not be drawn from the evidence." *Zablotny v. State Bd. of Nursing*, 2017 ME 29, ¶ 18, 156 A.3d 126. As the sole factfinder, the District Court "was free to selectively accept or reject portions" of witness testimony. *Quirk v. Quirk*, 2020 ME 132, ¶ 15, 241 A.3d 851. As the party that had the burden of proof before the District Court, Ms. O'Connell can only prevail if she "demonstrates that a contrary finding is compelled by the evidence." *Zablotny*, 2017 ME 29, ¶ 19, 156 A.3d 126.

The District Court's findings are amply supported by competent evidence in the record. There was testimony from Ms. Rogers, the AWP agent who executed the search, supported by photo and video evidence, which detailed the truly squalid conditions the cats were living in, including litter boxes overflowing with feces, holes in the walls and ceiling which allowed the cats to travel the length of the home in the insulation, and deceased cats packed into garbage bags on the porch and scattered throughout the house. Ms. Rogers also testified to the condition

of the animals she seized, noting that many needed immediate veterinary care, and some were so sick that they appeared deceased when she first observed them.

Dr. Rachel Fiske, assistant state veterinarian for the Maine Department of Agriculture, Conservation and Forestry, testified to the condition of the cats removed from the residence. Dr. Fiske testified that the majority of the cats had obvious clinical signs of disease. Many had discharge from their noses and eyes. Many had drainage coming from their ears, which indicated the presences of ear mites. Several cats presented signs of severe dental or oral disease. Dr. Fiske found after examining the cats that most of them had signs of Upper Respiratory Infections.

Nine of the deceased cats were submitted for forensic examination. Dr. Nanny Wenzlow performed these necropsies and testified to findings. The reports were also admitted as evidence. Dr. Wenzlow found that all of the deceased cats had extremely severe upper respiratory tract infections and empty gastrointestinal tracts, which indicated that the animals had not eaten for an extended period of time. Also, all the deceased cats had severe dehydration.

The evidence is more than enough for the District Court to conclude, as it did, that "[a]nimals in [Ms. O'Connell's] care suffered from disease, dehydration, and malnourishment, and were deprived of necessary medical attention and humanely clean conditions."[1] (August 5, 2022 Order ¶ 11.) The District Court was not required to find Ms. O'Connell's counterarguments persuasive, or her testimony credible or compelling. There is ample support in the record for the District Court's findings of fact, and based on those facts, it was no abuse of discretion to find

---

[1] Ms. O'Connell also objects to the District Court's conclusion because she claims the District Court ignored her "reasonable defense" that her sickness with COVID-19 caused an absence from the home that was out of her control. The District Court expressly addressed this argument, stating "The Court cannot view the dilapidated and unclean conditions of the house and rampant disease among the cat population as attributable only to the sudden illnesses. . . . [Ms. O'Connell] was unable to provide adequate care for the large cat population she brought into her house before and after she became ill in January 2022." (August 5, 2022 Order ¶ 10.)

that Ms. O'Connell did not show that she was capable of caring for a large cat population safely and humanely.

Abuse of Discretion (CV-19-448)

Ms. O'Connell argues that the District Court's finding that all of the seized cats, except for the nine cats the State expressly withheld, had been returned to her pursuant to the District Court's prior order, was clearly erroneous. Once again, her argument is primarily a relitigation of the factual issues before the District Court and falls well short of showing that the District Court's findings were wholly unsupported by competent evidence in the record.

The record before the District Court included testimony from Liam Hughes, the Director of the AWP at the time, and Ms. Rogers, who was involved with the return of Ms. O'Connell's cats. Mr. Hughes testified to the inventory procedure used by the AWP, and described specifically how the AWP individually photographed each cat seized from Ms. O'Connell and assigned it a number, which was stored both by the AWP and the shelter where the cat was housed. These records were checked at the time the cats were returned to ensure that they were the same cats.

Ms. Rogers testified that she matched the cats' ID numbers to their photographs when she returned the cats and testified that she positively identified the cats. Ms. Rogers testified that she had no doubt the cats she returned were the same ones that were seized. Ms. Rogers and Mr. Hughes both testified that all of the locations where Ms. O'Connell's cats were kept exclusively housed her cats, making a mix up nearly impossible.

The District Court found the State's witnesses credible. Ms. O'Connell asks this court to revisit the credibility of the State's witnesses, but again, that is not this court's role. The credibility of the witnesses is for the District Court to determine. This court's role is limited to

9

determining whether the District Court could have found that the State did not withhold nine additional cats based on its own evaluation of the evidence before it. The District Court was well within the bounds of its discretion to find the State's witnesses credible. Therefore, its findings of fact were not clearly erroneous, and must be upheld.

Evidentiary Rulings

Ms. O'Connell also raises a number of evidentiary rulings which she claims prejudiced her in the hearing. Specifically, Ms. O'Connell objects to the admission of Ms. Rogers's affidavit attached to the warrant to seize the cats and Dr. Fiske's affidavit concerning the medical condition of the seized cats on the grounds that they are inadmissible hearsay. Ms. O'Connell also argues that the District Court erred by excluding evidence from CV-19-448 which she argues would have proven that her cats were infected with a parasite that makes them uniquely susceptible to dehydration while under the State's care in 2019, and by excluding an article from the Journal of Feline Medicine and Surgery. An appellate court reviews a trial court's evidentiary rulings "for clear error and an abuse of discretion." *In re Children of Brittany B.*, 2020 ME 1, ¶ 15, 223 A.3d 109.

The District Court did not err by allowing the hearsay evidence contained in the Rogers and Fiske affidavits into evidence. 17 M.R.S. § 1021(3) expressly provides that "[a]ll veterinary records, seizure reports prepared by a humane agent, a state veterinarian or a person authorized to make arrests, police reports, witness statements and other written documents are admissible as evidence when the authors of these documents are available for cross-examination at a hearing."[2]

---

[2] Ms. O'Connell argues that the statutory exception to the hearsay rule violates the Confrontation Clause. The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial in criminal prosecutions. U.S. Const. amend. VI; Me. Const. art. I, § 6; *State v. Beeler*, 2022 ME 47, ¶ 20, 281 A.3d 637. Even though the State is the plaintiff, this is a civil action, not a criminal prosecution. The Confrontation Clause does not apply.

Ms. Rogers and Dr. Fiske were both available for cross-examination, so the District Court did not err by admitting their affidavits.

The District Court did not abuse its discretion by refusing to admit veterinary records from CV-19-448. The veterinarian who completed those records was not present to be cross-examined, nor was anyone with personal knowledge of the records. (*See* June 2, 2022 Tr. 106-08.) Some of the records Ms. O'Connell sought to have entered could not even be authenticated. (*See* June 2, 2022 Tr. 115: 2-20.) The District Court even accepted Ms. O'Connell's testimony about this evidence, specifically allowing her to talk about the condition of the cats when they returned home from the State's care, though it correctly took care to keep the testimony focused on matters relevant to 2022. (June 2, 2022 Tr. 108: 13-18, 112: 24-25, 113:1-7.)

The District Court also did not err by excluding the article from The Journal of Feline Medicine and Surgery. As the District Court explained to Ms. O'Connell, reading from an article purportedly written by an expert is not expert testimony, it is inadmissible hearsay.

Even if every evidentiary ruling had gone the way Ms. O'Connell would have preferred, this would not require the District Court to agree with Ms. O'Connell's legal conclusions. Again, it is solely the prerogative of the factfinder to decide which witnesses to believe, what significance to attach to the evidence, and what inferences to draw from the evidence. *Zablotny*, 2017 ME 29, ¶ 18, 156 A.3d 126. The appellate court's role is limited to determining whether the court could have found the facts that it did based on competent evidence in the record, and whether those facts would allow the District Court to find, by a preponderance of the evidence, "that the animal[s] ha[ve] been abandoned or cruelly treated by [their] owner or the animal[s] [are] maimed, disabled, diseased, dehydrated, malnourished or injured." 17 M.R.S. § 1021(3).

11

The District Court's findings are well supported by competent evidence even without the evidence Ms. O'Connell objects to. Therefore, even if it was error to admit the affidavits, the error was harmless. *See Banks v. Leary*, 2019 ME 89, ¶ 18, 209 A.3d 109 ("a trial court's error in relying on improperly admitted evidence is harmless when the improperly admitted evidence is cumulative to competent evidence in the record"). Even if it was error to exclude the veterinary reports proffered by Ms. O'Connell, the District Court was not required to draw the inferences from them that Ms. O'Connell asked it to. As the court has already described, the District Court's findings of fact were supported by an abundance of evidence in the record, including testimony from witnesses that it found credible and persuasive, extensive documentation of the cats' health and living conditions, and much more.

Constitutional Claims

Ms. O'Connell argues that her constitutional rights were violated in these proceedings without identifying a right that was violated or an action by the State which supposedly violated the right. (Appellant Br. 53.) The court will disregard this argument, as it does not identify any legal ground to overturn the District Court's orders.

Ms. O'Connell also challenges the facial constitutionality of 17 M.R.S. § 1021, on the basis that "[t]here can be no doubt, if common sense prevails, that many aspects of the law allowing the State to take possession of living animals opens the door to abuse of authority." (Appellant Br. 54.) Ms. O'Connell again does not identify any particular provision of the law she objects to, nor the constitutional provision it supposedly violates. The court will disregard this vague argument.[3]

---

[3] Ms. O'Connell has made some suggestion that the page limit for her brief inhibited her from making her constitutional arguments. Considering that Ms. O'Connell submitted a sixty-six page brief, with fifty-five pages of argument, the court does not find this persuasive.

Fruit of the Poisonous Tree

Ms. O'Connell argues that all evidence seized as a result of her brother's report to animal control should have been excluded under the doctrine of the "fruit of the poisonous tree." The "fruit of the poisonous tree" refers to the doctrine that requires any evidence obtained through the exploitation of *police* illegality to be excluded. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Mr. O'Connell is not a police officer or an agent of the state. The doctrine does not apply.

17-A M.R.S. § 103(1)

Ms. O'Connell also argues that the "spirit" of 17-A M.R.S. § 103(1) applies to her case. She does not appear to have raised this issue before the District Court, so it is waived. *Foster v. Oral Surgery Assocs., P.A.*,2008 ME 21, ¶ 22, 940 A.2d 1102 ("An issue raised for the first time on appeal is not properly preserved for appellate review.") Even if Ms. O'Connell had properly preserved the issue for appeal, the argument has no merit. The statute plainly does not apply to these facts, in spirit or otherwise.

Rule 41

Ms. O'Connell argues that the State should have been precluded from bringing a second animal welfare proceeding until it fully complied with the District Court's September 15, 2020, order, citing M.R. Civ. P. 41(b)(2). Rule 41(b)(2) allows a defendant to move to dismiss a pending action when the plaintiff fails to prosecute its claim for 2 years, or to comply with any order of the court. First of all, there is no evidence that Ms. O'Connell ever made a Rule 41(b)(2) motion. Even if she had, the rule does not apply to this situation. Rule 41(b)(2) is not applicable to other lawsuits between the parties. CV-22-75 is a different case based on new conduct and cannot be dismissed by operation of Rule 41(b)(2) for failure to follow a court order in CV-19-

13

448. The court does not reach the issue of whether the State actually failed to follow a court order in a way that would warrant dismissal under Rule 41(b)(2), as that question is irrelevant to these proceedings.

Rule 42

Ms. O'Connell argues that she was prejudiced by the District Court's decision to consolidate the two matters pursuant to M.R. Civ. P. 42. Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, in the same county or division or a different county or division, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The District Court's decision to consolidate the hearings was eminently reasonable. The matters concerned the same parties and a substantial factual nexus, at least to the extent that the two matters concerned many of the same cats, the same caregiver, and the same property. Consolidating the hearings could be reasonably expected to avoid unnecessary delay in deciding the motions. Ms. O'Connell's argument that she was somehow prejudiced by the decision to hear both motions at once has no merit.

Security

There is a pending motion to dismiss filed by the State based on the security provision in 17 M.R.S. § 1021(6)(D), which conditions the defendant's right to appeal from a judgment of the District Court on the defendant giving "sufficient security to satisfy the applicant or person taking custody of the animal that he will pay all expenses for its care and support pending appeal." The District Court never set an amount for security, nor does it appear that the State

14

ever requested security.[4] Regardless, because Ms. O'Connell does not prevail on the merits of her appeal, the issue is moot.

The entry is

> The two judgments of the District Court in the consolidated matters are hereby AFFIRMED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date:  June 9, 2023

Harold Stewart, II
Justice, Superior Court

---

[4] The Law Court has suggested in a memorandum of decision that the District Court should be the one to determine the amount of security before the appeal is filed, but that the District Court can and should apply M.R. Civ. P. 91(f) to waive the security requirement "if the court . . . finds that the appeal is brought in good faith and is not frivolous and that the applicant is without sufficient funds to pay all or part of the costs of filing the appeal. . . ." *See Animal Welfare Program v. Clark,* Mem 08-239 (Oct. 27, 2008).