MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 193
Docket:       Ken-16-342
Argued:       April 12, 2017
Decided:      September 12, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HUMPHREY, JJ.
Dissent:      JABAR, J.

STEPHEN DOANE

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES

SAUFLEY, C.J.

[¶1]  The Department of Health and Human Services appeals from a summary judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) declaring that the District Court—not the Department—has exclusive original jurisdiction over the decision to terminate physician Steven Doane's participation in, and reimbursement from, MaineCare and any other medical assistance programs in Maine.[1]  The Department argues that the court erred in concluding that a provider's participation in MaineCare constitutes a "license," the revocation of which invokes District Court jurisdiction.  *See* 4 M.R.S. § 152(9) (2016); 5 M.R.S. §§ 8002(5), 10051(1) (2016).  We agree

---

[1]  Because the basis for the termination was grounded in state and federal Medicaid and MaineCare regulations, and no other programs have been identified by the parties on appeal, we do not discuss further any other medical assistance programs.

2

that jurisdiction did not lie in the District Court, and we vacate the court's judgment.

## I. BACKGROUND

[¶2] The following undisputed facts are drawn from the record of the proceedings in the Superior Court and the undisputed statements of material facts presented on Doane's motion for summary judgment. *See Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 2, 140 A.3d 1242. Stephen Doane is a physician licensed to practice in Maine by the Board of Licensure in Medicine. That Board censured Doane in March 2015 for (1) being insufficiently aware of the hazards associated with the opiate medications he was prescribing to a patient who ultimately died of accidental oxycodone and cyclobenzaprine intoxication, (2) failing to follow up on information from other doctors about that patient, and (3) violating a Board rule regarding the use of controlled substances for pain treatment. The Board found that Doane had not created a written treatment plan, discussed with the patient the risks and benefits of using controlled substances, implemented a written agreement outlining patient responsibilities, or kept accurate and complete medical records. The Board renewed his license, but it imposed terms of probation and required

him to pay $12,000 to the Board for the costs of investigation and enforcement.

[¶3]   In a letter dated April 9, 2015, the Department of Health and Human Services informed Doane that it had decided to terminate his participation in, or reimbursement from, the MaineCare program.   The Department stated that it took its action pursuant to the MaineCare Benefits Manual, 14 C.M.R. 10 144 101-I-9, -26 to -28, §§ 1.03-6, 1.19-1 to -3 (2014),[2] and the authority granted by the federal government through 42 C.F.R. part 1002 (2016).   Specifically, the Department indicated that the sanction was being imposed because Doane had violated the "regulations or code of ethics governing the conduct of occupations or professions or regulated industries," had failed to "meet standards required for State or Federal law for participation (e.g. licensure or certification requirements)," and had received a "[f]ormal reprimand or censure [from] an association of the provider's peers for unethical practices."   14 C.M.R. 10 144 101-I-26 to -27, § 1.19-1(M), (O), (R).

[¶4]   The letter informed Doane that he could request informal review of the determination within sixty days after receiving the letter and that if he

---

[2]   Rule 1.19 has since been recodified as Rule 1.20.  *See* Dep't of Health & Human Servs. Adopted Rule No. 2017-105 (effective July 5, 2017).

disagreed with the result of that review, he could request an administrative hearing within sixty days after receiving the informal review decision. *See* 14 C.M.R. 10 144 101-I-33 to -34, § 1.21 (2013); *see also* 5 M.R.S. §§ 8001-11008 (2016). Doane requested informal review. The Department, after informal review, affirmed the initial decision terminating Doane's participation in MaineCare and informed Doane, by letter dated September 11, 2015, of his right to request an administrative hearing within sixty days.

[¶5] On September 23, 2015, Doane filed a complaint in the Superior Court seeking a declaratory judgment that the Department's decision terminating his participation in, and reimbursement by, the MaineCare program constituted a license revocation—a decision over which the District Court has exclusive original jurisdiction. *See* 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1); M.R. Civ. P. 80G. He sought an order enjoining the progress of the administrative proceeding to terminate his participation in the programs. Doane also filed a request for an administrative hearing with the Department on November 5, 2015, but he later filed a motion in the Superior Court declaratory judgment proceeding seeking a preliminary injunction enjoining the Department from utilizing the administrative proceeding to revoke that alleged license.

[¶6]  The Department moved to dismiss Doane's declaratory judgment complaint on the ground that no license had been revoked but rather the Department had determined not to contract with Doane.  It referred to and attached Doane's employer's provider agreement with the Department that was in effect at the time of the events that led to Doane's discipline by the Board of Licensure in Medicine.  The Department also attached a copy of the decision of the Board of Licensure in Medicine allowing Doane to continue practicing medicine in Maine.

[¶7]  Doane opposed the motion to dismiss and moved for summary judgment, submitting a statement of material facts with supporting evidence. The Department filed a responsive statement of material facts admitting the pertinent facts and additionally referring to the informal review decision.

[¶8]  The court entered a judgment on July 1, 2016, in which it denied the Department's motion to dismiss and granted Doane's motion for summary judgment, essentially providing the declaratory relief sought by Doane.  The court concluded that the ability to provide and be reimbursed for MaineCare patient treatment constituted a form of permission that fell within the statutory definition of a "license" provided in 4 M.R.S. § 152(9) and 5 M.R.S. § 8002(5), and therefore that the District Court had exclusive jurisdiction to

6

adjudicate the Department's proposed termination of Doane's participation in the MaineCare program.

[¶9] The Department timely appealed from the judgment. *See* 14 M.R.S. §§ 1851, 5959 (2016); M.R. App. P. 2. Upon inquiry from the court, Doane filed a letter indicating that he did not intend to pursue the motion for preliminary injunction at that time.

## II. DISCUSSION

[¶10] At the outset, we agree with the Superior Court that it had the authority to rule on the legal dispute raised here. "When a party seeks relief that is beyond the jurisdiction of the administrative agency . . . and when it would be futile for the plaintiffs to complete the administrative appeal process[,] the party need not exhaust its administrative remedies before seeking judicial relief." *Houlton Band of Maliseet Indians v. Boyce*, 1997 ME 4, ¶ 11, 688 A.2d 908 (alterations in original) (quotation marks omitted). Moreover, a jurisdictional issue such as that raised here "may be raised at any time in a proceeding." *Ford Motor Co. v. Darling's* (*Darling's I*), 2014 ME 7, ¶ 41, 86 A.3d 35. Accordingly, we review the court's summary judgment.

A.    Summary Judgment and the Standard of Review

[¶11]    Summary judgment "shall be rendered forthwith" if the supported statements of material facts "show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law."  M.R. Civ. P. 56(c).  The relevant facts are not in dispute, and we review the summary judgment de novo for errors of law.  *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793.

[¶12]  We also review de novo whether a trial court has subject matter jurisdiction.  *Midland Funding LLC v. Walton*, 2017 ME 24, ¶ 12, 155 A.3d 864.  Generally, court jurisdiction is "strictly a function of statute."  *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 21, 879 A.2d 1007.  Statutory interpretation is also reviewed de novo.  *Carignan v. Dumas*, 2017 ME 15, ¶ 14, 154 A.3d 629.

[¶13]  In interpreting statutes, our primary objective is "to discern and give effect to the Legislature's intent."  *Ford Motor Co. v. Darling's* (*Darling's II*), 2016 ME 171, ¶ 24, 151 A.3d 507 (quotation marks omitted).  "To determine that intent, we first look to the statute's plain meaning and the entire statutory scheme of which the provision at issue forms a part."  *Id.* (quotation marks omitted).  We determine the plain meaning of a statute "by taking into account

8

the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Id.* (quotation marks omitted). We will reject statutory interpretations "that are inimical to the public interest or that produce absurd or illogical results." *Id.* (quotation marks omitted). Only if the meaning of a statute is ambiguous after applying these principles will we consider extrinsic information such as legislative history. *Id.* If a regulation conflicts with an existing statute, the statute controls. *See Larson v. New England Tel. & Tel. Co.*, 141 Me. 326, 334, 44 A.2d 1 (1945).

B. Jurisdiction Over Licensing Decisions

[¶14] The District Court has exclusive jurisdiction, upon complaint of an agency or the Attorney General, to revoke or suspend certain licenses. *See* 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1). In the title of the Maine Revised Statutes establishing the courts and their jurisdiction, the Legislature has conferred on the District Court jurisdiction over the following:

> **Licensing jurisdiction.** Except as provided in Title 5, section 10004; Title 8, section 279-B; Title 10, section 8003; Title 20-A, sections 10712 and 10713; Title 29-A; Title 32, chapters 2-B, 114 and 135; and Title 35-A, section 3132, *exclusive jurisdiction upon complaint of an agency* or, if the licensing agency fails or refuses to act within a reasonable time, upon complaint of the Attorney General *to revoke or suspend licenses issued by the agency*. The District Court has original jurisdiction upon complaint of a licensing agency to determine whether renewal or reissuance of a license of that agency may be refused. The District Court has

original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or the Department of the Attorney General alleging any violation of a license or licensing laws or rules.

Notwithstanding any other provisions of law, a licensing agency may not reinstate or otherwise affect a license suspended, revoked or modified by the District Court pursuant to a complaint filed by the Attorney General without the approval of the Attorney General.

4 M.R.S. § 152(9) (emphasis added); *see also* M.R. Civ. P. 80G. The District Court's jurisdiction with respect to license revocation or suspension is also set forth in the Maine Administrative Procedure Act:

**Jurisdiction.** Except as provided in section 10004; Title 8, section 279-B; Title 10, section 8003; Title 20-A, sections 10712 and 10713; Title 29-A; and Title 32, chapters 2-B, 114 and 135, *the District Court has exclusive jurisdiction upon complaint of any agency* or, if the licensing agency fails or refuses to act within a reasonable time, upon complaint of the Attorney General *to revoke or suspend licenses issued by the agency* and has original jurisdiction upon complaint of an agency to determine whether renewal or reissuance of a license of that agency may be refused.

5 M.R.S. § 10051(1) (emphasis added).[3]

[¶15] Separately, a physician's authority to practice medicine in Maine is provided through the issuance of a license from the Board of Licensure in Medicine. *See* 32 M.R.S. § 3274 (2016). Pursuant to 4 M.R.S. § 152(9) and

---

[3] The Board of Licensure in Medicine—established by 5 M.R.S. § 12004-A(24) (2016) and 32 M.R.S. § 3263 (2016) (codified within chapter 48 of title 32)—is not excepted from District Court jurisdiction for license revocation or suspension.

5 M.R.S. § 10051(1), license revocation proceedings by the Board of Licensure in Medicine are not subject to the District Court's *exclusive* jurisdiction over license revocations and suspensions because the proceedings fall within "[t]itle 10, section 8003." *See* 10 M.R.S. §§ 8001-A(4), 8003(5) (2016); *see also* 32 M.R.S. §§ 3269(4), 3282-A (2016).

[¶16]  It is unclear whether the Board now has exclusive jurisdiction over the revocation or suspension of a medical license or whether that jurisdiction is concurrent with the District Court.  As set forth in 10 M.R.S. § 8003(5), the "jurisdiction to suspend and revoke occupational and professional licenses conferred by this subsection is concurrent with that of the District Court."  We recently noted, however, without discussing this provision of title 10, that the Legislature's amendment of the Board of Licensure in Medicine's authorizing statute in title 32 to omit the option of filing a complaint with the District Court[4] left the Board with "only one path" to revoke a license.  *Zablotny v. State Bd. of Nursing*, 2014 ME 46, ¶ 14 n.2, 89 A.3d 143.  Because the dispute here focuses not on Doane's medical license but on his capacity to participate in and receive compensation from Maine's

---

[4]  *See* P.L. 2013, ch. 355, §§ 8-12 (effective Oct. 9, 2013) (codified at 32 M.R.S. § 3282-A (2016)).

Medicaid program, MaineCare, we need not resolve any jurisdictional question related to the revocation of medical licenses.

[¶17]  The issue now before us is whether, as a matter of law, the capacity to participate in MaineCare as a provider who may receive compensation is also a "license," the revocation of which the Legislature intended to place within the jurisdiction of the District Court.

[¶18]  The Administrative Procedure Act defines a "license" as follows: "'License' includes the whole or any part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law which represents an exercise of the state's regulatory or police powers." 5 M.R.S. § 8002(5).  This definition is the source of the parties' dispute over whether the District Court or the Department has original jurisdiction over the decision whether a provider may continue to participate in and be reimbursed by Maine's Medicaid program—MaineCare.

[¶19]  An understanding of the federal Medicaid program is important to resolve the question presented here.  Medicaid is a primarily federally funded program.  *See* 42 U.S.C.S. § 1396-1 (LEXIS through Pub. L. No. 115-45).  The federal government appropriates money to Maine to pay for medical, rehabilitation, and other assistance "on behalf of families with dependent

children and of aged, blind, or disabled individuals, whose income resources are insufficient to meet the costs of necessary medical services." *Id.* The applicable federal regulations require gubernatorial and federal review and approval of the state plan. 42 C.F.R. §§ 430.10-430.16 (2016).

[¶20] Maine's Department of Health and Human Services administers the Medicaid program in Maine. *See* 22 M.R.S. § 3173 (2016); *see also* 24-A M.R.S. § 6911 (2016). To perform its functions, the Department is authorized and required to issue rules and regulations to administer Maine's Medicaid program, known as MaineCare. *See* 22 M.R.S. § 3173.

[¶21] The Department has adopted Medicaid rules in the form of the MaineCare Benefits Manual. *See generally* 14 C.M.R. 10 144 101, ch. 101 (2016). Neither federal Medicaid nor state MaineCare regulations call for the issuance of a "license" to a physician to receive Medicaid funds for the provision of medical services. The Manual does, however, require a provider seeking to provide services to MaineCare members to complete an enrollment form and enter into a Medicaid provider agreement. 14 C.M.R. 10 144 101-I-2 to -4, §§ 1.02-4(H), 1.03-1(A) (2014). The agreement is conditioned on compliance with the requirements for provider participation outlined in the Manual. *See generally* 14 C.M.R. 10 144 101, ch. 101.

[¶22]  Some providers, pursuant to the federal Medicaid regulations, must or may be excluded from the Medicaid program by the federal Office of Inspector General.  *See*  42 C.F.R.  §§ 1001.101,  1001.201-1001.951  (2016). The Inspector General's office must exclude from participating in the Medicaid program providers who have been convicted of certain types of crimes, *see id.* § 1001.101,  and  *may*  exclude  from  participation  providers  who  have committed  other  misconduct,  including  providers  who  have  had  their  state professional  licenses  revoked  or  suspended,  *see id.*  §§ 1001.201-1001.951. The  federal  regulations  are  not  to  be  "construed  to  limit  a  State's  own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law."  42 C.F.R. § 1002.2(b) (2016) (redesignated as 42 C.F.R. § 1002.3(b) by 82 Fed. Reg. 4100 § 36 (Jan. 12, 2017)).

[¶23]  In exercising Maine's authority to exclude individuals or entities from participating in the MaineCare program, the Department may impose sanctions on a provider for "[v]iolation of any . . . regulations or code of ethics governing the conduct of occupations or professions or regulated industries; . . . [f]ailure  to  meet  standards  required  by  State  or  Federal  law  for participation (e.g. licensure or certification requirements); [or] . . . [f]ormal reprimand or censure by an association of the provider's peers for unethical

14

practices." 14 C.M.R. 10 144 101-I-26 to -27, § 1.19-1(M), (O), (R).[5] If a provider's participation in the program is suspended or terminated as a sanction, the provider is precluded "from submitting claims for payment, either personally or through claims submitted by any clinic, group, corporation or other association." *Id.* § 1.19-3(B)(2).

[¶24] The State's regulations explicitly vest in the Commissioner of the Department of Health and Human Services the responsibility to decide whether to impose sanctions within the MaineCare program and thus whether to continue a physician's or a facility's participation in the program as set forth in the provider agreement. *See* 14 C.M.R. 10 144 101-I-28, § 1.19-3(A). The Commissioner "may delegate sanction responsibilities to the Division of Audit, and the Director of MaineCare Services." *Id.*

[¶25] When the Department decides to limit, terminate, or otherwise sanction a physician who is participating as a MaineCare provider pursuant to a provider agreement with the State of Maine, the Manual authorizes a provider to pursue informal review by writing to the Director of MaineCare Services within sixty days, after which, if dissatisfied, the provider may

---

[5] The Manual also authorizes the Department to "terminate a provider's participation . . . without cause," though neither party contends that this is what happened here. *See* 14 C.M.R. 10 144 101-I-8, § 1.03-4(A) (2014).

request an administrative hearing, with the Commissioner having final decision-making authority, or may elect to participate in binding arbitration. 14 C.M.R. 10 144 101-I-33 to -34, § 1.21-1(A), (B) (2013). If the provider is dissatisfied with the final decision after an administrative hearing, "an appeal may be taken to the Superior Court pursuant to the Administrative Procedure Act." 14 C.M.R. 10 144 101-I-33, § 1.21-1(A); *see* 5 M.R.S. § 11002 (2016); M.R. Civ. P. 80C.

[¶26] The question before us is whether the Manual's administrative review process for the imposition of sanctions, through which a provider may appeal the Department's administrative decision to the Superior Court, applies to the termination of a physician from the MaineCare program, or whether, by statute, the Legislature has provided that termination is the revocation of a "license," bringing the decision within the exclusive, or even concurrent, jurisdiction of the District Court. *See* 10 M.R.S. § 8003(5)(A-1)(2-A). To answer that question, we look to the meaning of the statutes in the context of the entire statutory scheme. *See* 4 M.R.S. § 152(9); 5 M.R.S. §§ 8002(5), 10051(1); *Darling's II*, 2016 ME 171, ¶ 24, 151 A.3d 507.

[¶27] Sections 152(9) and 10051(1) do not specifically mention the Medicaid or MaineCare program, and they do not list or describe the license

revocations and suspensions that fall within the District Court's jurisdiction. The statutes do, however, explicitly list, by statutory citation, license determinations that are excepted from that jurisdiction. *See* 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1). Examining the nature of the license revocations or suspensions excepted from the District Court's jurisdiction gives a strong indication of what, if not excepted, constitutes the revocation or suspension of a professional or occupational "license."

[¶28] The excepted occupational licensing decisions are as follows:

- Suspension of a harness racing license, 8 M.R.S. § 279-B (2016);

- Suspension or revocation of a "license, certification, registration, permit, approval or other similar document evidencing admission to or granting authority to engage in a profession, occupation, business or industry," 10 M.R.S. § 8003(3), (5)(A-1)(2) (2016);[6]

- Suspension or revocation of an emergency medical services person's "license," 32 M.R.S. § 90-A (2016); and

- Suspension or revocation of a license pursuant to the Maine Uniform Securities Act, title 32, chapter 135.

Each occupational license revocation or suspension listed operates as a complete revocation or suspension of the authorization to engage in a

---

[6] Registrations, permits, approvals, or other documents "evidencing the grant of authority to engage in the business of banking" are governed by title 9-B, which the Legislature acknowledged as separate from the regulation of professions, occupations, businesses, or industries in 10 M.R.S. § 8003(3) (2016).

profession or occupation. None of these suspensions or revocations is analogous to a termination of participation in a federally funded program through a provider agreement. Moreover, in the face of explicit regulatory authority providing for the Department to act as the decision-maker, subject to appellate review in the Superior Court, the Legislature has not enacted any legislation to explicitly remove the Department's authority and require initial decision-making in the District Court.

[¶29] From the language of the statutes, viewed in context of the entire statutory scheme, *see Darling's II*, 2016 ME 171, ¶ 24, 151 A.3d 507, including the recent changes in statutes regarding the adjudicatory authority of the Board of Licensure in Medicine,[7] and considering the functional distinctions between a license revocation and a termination of participation in a program through a provider agreement, we conclude that the entity that provides a physician with the "approval . . . required by law [that] represents an exercise of the state's regulatory or police powers," 5 M.R.S. § 8002(5), to practice medicine is the Board of Licensure in Medicine. *See* 5 M.R.S. § 12004-A(24) (2016); 32 M.R.S. § 3270 (2016). The Board—not the Department of Health and Human Services—is responsible for initiating any effort to revoke or

---

[7] *See* P.L. 2013, ch. 355, §§ 8-12.

suspend a physician's license for violating professional standards. *See* 5 M.R.S. §§ 10001-10005; 32 M.R.S. §§ 3269(4), 3282-A; *see also* 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1); 10 M.R.S. §§ 8001-A(4), 8003(5). It is through the professional licensing of physicians—not through the State's implementation of MaineCare as part of the federal Medicaid program—that the State exercises its police power on behalf of *all* Maine citizens to "'preserv[e] . . . the health, safety and comfort of [its] citizens'" from unqualified, incompetent, or unethical physicians. *State v. Pelletier*, 2015 ME 129, ¶ 7, 125 A.3d 354 (quoting *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915)).

[¶30] To the extent that the Department's decision regarding Doane affects the health or safety of Maine's citizens, it does so only with respect to those Maine citizens who receive services through the Department's MaineCare program. The Department's other purpose—to make the best use of State funds received from the federal government—may redound to the fiscal benefit of all citizens, but it is not the exercise of the police power to license and regulate the medical profession.

[¶31] To avoid an interpretation of the statutes that is "inimical to the public interest or that produce[s] absurd or illogical results," *Darling's II*, 2016 ME 171, ¶ 24, 151 A.3d 507 (quotation marks omitted), we construe

sections 152(9) and 10051(1) *not* to confer on the District Court jurisdiction over the imposition of a sanction on a MaineCare provider by the Department of Health and Human Services. Therefore, contrary to the determination of the Superior Court, the Department's decision to terminate Doane's participation in the MaineCare program does not fall within the licensing decisions over which the Legislature gave the District Court original and exclusive jurisdiction. *See* 4 M.R.S. § 152(9); 5 M.R.S. § 10051(1).[8]

[¶32] We vacate the judgment entered in favor of Doane and remand the matter for the Superior Court to enter a declaratory judgment that jurisdiction over the termination of Doane's participation as a provider in the MaineCare program is as set out in the MaineCare Benefits Manual.

The entry is:

> Judgment vacated. Remanded for the entry of summary judgment for the Department of Health and Human Services.

---

[8] From this record, we cannot determine whether additional process is available to Doane, who requested an administrative hearing in November 2015 but appears to have declined to prosecute his request to enjoin the Department from taking further action on his administrative challenge. *See* 14 C.M.R. 10 144 101-I-33, § 1.21-1(A) (2013).

20

JABAR, J., dissenting.

[¶33]   Because I disagree with the Court and would hold that the Department of Health and Human Services' decision to terminate Doane's participation in, and reimbursement from, Department-operated medical assistance programs constitutes revocation of a "license" within the meaning of the Administrative Procedure Act, I respectfully dissent.  A plain reading of the Administrative Procedure Act, 5 M.R.S. § 10051(1) (2016), and 4 M.R.S. § 152(9) (2016) provides that, except for certain statutory actions, including action taken by the Board of Licensure in Medicine pursuant to 10 M.R.S. § 8003 (2016), the District Court has exclusive jurisdiction upon the complaint of an agency to revoke a license issued by the agency.

[¶34]  In civil matters, the District Court has, with limited exceptions by statutory reference, including the Licensure Board, "exclusive jurisdiction upon complaint of an agency . . . to revoke or suspend licenses issued by the agency."   4 M.R.S. § 152(9); *see* M.R. Civ. P. 80G(a).   Similarly, the Administrative Procedure Act provides for jurisdiction in the District Court "upon complaint of any agency" and "upon complaint of an agency to determine whether renewal or reissuance of a license of that agency may be refused."   5 M.R.S. § 10051(1).   The Administrative Procedure Act defines

"license" expansively to include "the whole or any part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law which represents an exercise of the state's regulatory or police powers." 5 M.R.S. § 8002(5) (2016). Doane's right to participate as a provider in the MaineCare program is a "form of permission" by the Department and meets the Administrative Procedure Act's definition of "license."

[¶35] Applying the plain meaning of 5 M.R.S. § 8002(5), the decision to authorize MaineCare provider participation and payment is an "approval . . . required by law which represents an exercise of the state's regulatory or police powers." Despite the Department's contention that it was not acting in its regulatory or policing authority in reaching its decision to terminate Doane's MaineCare provider participation and payment, its decision was made to secure the best possible care for MaineCare patients and arose from the use of its power to preserve "the health, safety and comfort of [Maine] citizens." *State v. Pelletier*, 2015 ME 129, ¶ 7, 125 A.3d 354 (quotation marks omitted); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals . . . .").

[¶36]  The Department's action was a quintessential state regulatory action, as evidenced by the language of the Department's notice and its efforts to have the matter proceed through the administrative appeal process established by the MaineCare Benefits Manual.  The notice stated that the Department was "terminating [Doane's] participation in, and reimbursement from, all medical assistance programs administered by the Department," preventing Doane or any MaineCare "provider for whom [he is] an employee, partner, or owner" from receiving MaineCare reimbursement "for services rendered by [Doane,] including administrative and management services . . . ." The notice goes on to state that "[t]he general practical effect of this restriction is to prohibit employment in any capacity by a provider that receives reimbursement, <u>indirectly or directly</u>, from MaineCare or other Medicaid programs."  This sanction significantly affects Doane's practice of medicine in the State of Maine.

[¶37]  Removing a doctor from MaineCare reimbursement is not like the other contractual scenarios to which the Department points by which the State may provide for public health and safety, such as contracts for bridge construction, snowplowing, or mobile crisis intervention services.  Unlike those contractual services, a doctor's primary role is to influence the health

and safety of patients through direct, one-on-one appointments at regular intervals throughout the patients' lives. Though the Department administers MaineCare in part through provider agreements, without which a provider may not receive reimbursement from MaineCare funds, 14 C.M.R. 10 144 101-I-2 to -4 §§ 1.02-4(H), 1.03-1(A) to (C) (2016), providers may be excluded, as here, from the program for violations of regulations or ethics codes. *See* 14 C.M.R. 10 144 101-I-26 to -28 § 1.19-1 to -3 (2014).

[¶38] Sanctions for violations are not contractual in nature. Nor are they mere formalities agreed upon by the providers to the benefit of the Department: they are in place to protect the patients whom the doctor treats. Doane was sanctioned for violation of laws, regulations, or codes of ethics; for failure to meet standards for participation; and for formal reprimand or censure by peers due to unethical practice. 14 C.M.R. 10 144-101-I-26 to -27, § 1.19-1(M), (O), (R). These sanctions are the result of the Licensure Board's March 2015 censure of Doane following a patient's death from accidental intoxication from opiate medications Doane had prescribed. His censure and the resulting sanctions are not the result of fraudulent billing, self-referrals, or some other financial or administrative concern. *See* 14 C.M.R. 10 144-101-I-26 to -27 § 1.19-1(F), (J), (T). The Licensure Board's censure

24

and the Department's sanctions are plainly an exercise of the state's police power to provide for the health and safety of Maine citizens. *See Pelletier*, 2015 ME 129, ¶ 7, 125 A.3d 354. The Court's assertion that the Department's decision to remove Doane from MaineCare affects only the health or safety of those citizens who receive MaineCare services, Court's Opinion ¶ 30, does not prove that the Department's act was not an exercise of the police power. Whether a state is exercising its police power is not defined by the number of people affected; instead, it is determined by the nature of the regulatory action.

[¶39] Nor does the Department's purpose to make best use of federal funds provided to the State, Court's Opinion ¶ 30, prove that the Department's action here was not an exercise of police power. The Department's decision was not purely fiscal: because the Department imposed sanctions due to, inter alia, ethical violations, its decision was on its face a decision concerning the welfare of future MaineCare patients to whom Doane otherwise might have provided medical services. *See* 10 C.M.R. 10 144 101-I-27 § 1.19-1(M). Though one purpose of the Department may be to create "fiscal benefit," Court's Opinion ¶ 30, for Maine citizens, the fiscal benefit is only a secondary purpose. The primary purpose of the Department's role in MaineCare is to

administer a program that provides families and individuals with insufficient income resources access to necessary medical services. *See* 42 U.S.C.S. § 1396—1 (LEXIS through Pub. L. No. 115-51); 22 M.R.S. § 3173 (2016); 24-A M.R.S. § 6911 (2016); *see also* 22 M.R.S. § 42(1) (2016) (stating that the Department "shall issue rules and regulations considered necessary and proper for the protection of life, health and welfare, and the successful operation of the health and welfare laws"). The Department undertook to sanction Doane not because it would be fiscally imprudent to reimburse Doane for future services provided to MaineCare patients, but because he was censured by the Board for concerns with *medical care* provided to a patient.

[¶40] This removal of Doane from MaineCare reimbursement therefore falls into the broad definition of "license" as that term is used in the Administrative Procedure Act. *See* 5 M.R.S. § 8002(5). Although based on the same conduct that resulted in a censure by the Licensure Board, this action taken by the Department is separate and distinct from the action taken by the Licensure Board pursuant to 10 M.R.S. § 8003.

[¶41] I disagree with the Court that the exceptions from the District Court's licensing jurisdiction found in 4 M.R.S. § 152(9) provide any indication of the types of suspensions or revocations that are *not* excepted from the

26

District Court's licensing jurisdiction, Court's Opinion ¶ 27. Title 4 M.R.S. § 152(9) excepts from the District Court's jurisdiction "Title 10, section 8003," which excepts suspension or revocation of a "license, certification, registration, permit, approval or other similar document evidencing admission to or granting authority to engage in a profession, occupation, business[,] or industry." 10 M.R.S. § 8003(3); *see also id.* § 8003(5)(A-1)(2), (2-A). Also excepted are harness racing licenses, under title 8 section 279-B; licenses pursuant to the Maine Uniform Securities Act, title 32, chapter 135; the Real Estate Brokerage License Act, title 32, chapter 114; and the Maine Emergency Medical Services Act of 1982, title 32, chapter 2-B. While these statutes permit, as the Court notes, Court's Opinion ¶ 28, complete revocations or suspensions of the authorization to engage in a profession or occupation, these are the *exclusions* from the District Court's jurisdiction. It is legally significant that the suspension or revocation of a license by termination from MaineCare reimbursement and participation brought by the Department is *not* excepted from the District Court's jurisdiction.

[¶42] The Court considers "the functional distinctions between a true license revocation and a termination of participation in a program through a provider agreement" and concludes that the Board of Licensure of Medicine is

responsible for policing physicians. Court's Opinion ¶ 29. While this may be true, the expansive definition of "license" under the Administrative Procedure Act, coupled with the language of the statute conferring jurisdiction upon the District Court in section 152(9), affords Doane the right to a hearing in the District Court rather than a hearing before the Department. This reading comports with the purpose of the legislation—a neutral decision-maker should decide the contested matter rather than the agency seeking to revoke the physician's ability to practice. If the Court is correct, that the Board of Licensure in Medicine—and not the Department of Health and Human Services—is responsible for initiating any effort to revoke or suspend a physician's license for violating professional standards, Court's Opinion ¶ 29, then the Licensure Board should be making the decision regarding Doane's termination of participation in the MaineCare program. The Court discusses the issue of concurrent jurisdiction in section 8003. This discussion is not relevant to a discussion of the scope of section 152(9) because proceedings pursuant to section 8003 are excepted out of the legislation. The Court's approach affords a physician less protection before a state agency, than the physician would receive before the Licensure Board, which presumably has more expertise and experience dealing with alleged misconduct of physicians.

If the Legislature wants to give any agency, other than the Board of Licensure in Medicine, the authority to affect a physician's license without affording the physician a hearing before the District Court, or if the Legislature wants to give the Licensure Board exclusive jurisdiction over "any matter" affecting a physician's practice, then it will need to amend the Administrative Procedure Act and section 152(9). This revocation of the right to participate in the MaineCare program affects Doane's "license," therefore the Department of Health and Human Services must proceed in the District Court pursuant to section 152(9).

[¶43] For the reasons above, I would affirm the Superior Court's granting of Doane's motion for summary judgment.

Janet T. Mills, Attorney General, Thomas C. Bradley, Asst. Atty. Gen., and Christopher C. Taub, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant Department of Health and Human Services

Christopher C. Taintor, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellee Stephen Doane

Kennebec County Superior Court docket number CV-2015-168
FOR CLERK REFERENCE ONLY