STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-18-75

BRUCE ROSS, DMD,
        Petitioner

v.

**DECISION AND ORDER**
(M.R. Civ. P. 80C)

MAINE DEPARTMENT OF HEALTH
& HUMAN SERVICES,
        Respondent

Before the court is Petitioner Bruce Ross' (Ross) M.R. Civ. P. 80C Appeal of

Final Agency Action against the Maine Department of Health and Human Services

(DHHS or Department). For the reasons explained below, the court concludes that

the Petition for Review filed by Dr. Ross should be denied and the decision of the

Acting Commissioner should be affirmed.

## BACKGROUND

Dr. Ross, DMD, who has been practicing dentistry since 1988, works in a solo

practice office in Rumford, Maine, and employs one dental hygienist, Maureen

Leavitt, and an officer manager, Jennifer Herbert. In early 2013, DHHS, Division

of Audit, initiated an audit of records and billings for dental services that Dr. Ross

provided to MaineCare members, for the period from February 1, 2008 to December

31, 2012. (CR 000033). Although Dr. Ross provided DHHS with the documents

1

requested by the agency, the Department claims that most of them were illegible and unsigned. Based on a review of records within the audit time period, DHHS issued a Notice of Violation dated January 29, 2016, seeking recoupment of $216,371.06. The requested recoupment was based on a number of alleged violations, including lack of legible documentation, failure to sign medical records as required by rule, inaccurate or duplicate billing, and failure to adequately document some specific services, among others.

Dr. Ross timely requested an informal review. After Herbert Downs, the Director of the Audit Division, performed the informal review, DHHS reduced the recoupment sought to $173,536.88. Dr. Ross then timely requested a *de novo* administrative hearing, which was held in South Paris on July 10, 2017. That hearing focused on a number of issues, including; whether Dr. Ross should have been penalized at all for the illegible documents, and if so, whether the penalties levied against him were justified by MaineCarerules; whether DHHS was justified in seeking 100% recoupment for certain billings, and; whether DHHS sought to recoup overpayments it had already recouped. On October 27, 2017, the Administrative Hearing Officer issued her Recommended Decision, in which she recommended that the Acting Commissioner affirm the recoupment sought of $173,536.88. A few days later, on October 31, 2017, the Acting Commissioner, Bethany Hamm, issued her Final Decision. Although she agreed with much of the Hearing Officer's

recommendations, her Final Decision found that DHHS "failed to properly exercise its discretion in assessing a 20% penalty for Ross' violation of the signature requirement." (CR 001170). She ultimately reduced the penalty for these violations from 20% to 1%. As a result of this reduction, the final, extrapolated recoupment number was reduced to $42,971.69. Dr. Ross now timely appeals. Oral argument before this court was held on September 4, 2019.

## STANDARD OF REVIEW

When an administrative agency's decision is appealed pursuant to M.R.Civ. P. 80C, the court "reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence." *Centamore v. Dep't of Hum. Servs'*, 664 A.2d 369, 370 (Me. 1995). "The focus of the appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence, which supports the result, reached by the agency." *CWCO, Inc. v. Superintendent of Ins.*, 1997 Me 226, ¶ 6, 703 A.2d 1258. "The agency's interpretation of its own regulations is entitled to considerable deference on judicial review. Such deference is particularly appropriate in an area as complex as Medicaid reimbursement." *Trull Nursing Home, Inc. v. Dep't of Human Servs.*, 461 A.2d 490, 496 (Me. 1983). In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy,* 2014 ME 82, ¶ 11, 95

3

A.3d 612. Ultimately, the court's review is limited to whether the agency's decision is: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C).

## DISCUSSION

### DHHS' Summary Table

Dr. Ross first attacks the validity of the use by DHHS of a summary table for the MaineCare claims. Because of the extensive findings and data that DHHS accumulated (totaling 139 pages of spreadsheet data), the Department made a summary table of 13 records as a representative sample of Dr. Ross' documentation deficiencies in conjunction with the full spreadsheet. Dr. Ross contends that Janie Turner, a DHHS employee who conducted the initial audit, compiled the summary table using the same data, and he argues that the summary table "was not to summarize the dental records themselves, but rather to summarize Janie Turner's *interpretation* of those records." Dr. Ross challenges the summary table as being impermissibly "interpretive," *see State Office Sys., Inc. v. Olivetti Corp.*, 762 F.2d 843, 845-46 (10th Cir. 1985), and thus more than a simple compilation of voluminous records, as contemplated by the rules of evidence. *See* M.R. Evid. 1006.

4

DHHS counters that Dr. Ross challenged the admissibility of the summary table only after Acting Commissioner Hamm's Final Decision, meaning that his argument should be deemed waived. Although Dr. Ross' original argument before the Hearing Officer amounted to little more than claiming that the "DHHS spreadsheet is entitled to no weight," it is sufficient for the court to decide the issue on the merits.

Nonetheless, the court agrees with DHHS that the Hearing Officer was entitled to rely upon the summary table. This is because administrative hearings in Maine do not follow the rules of evidence, *see* 10-144 C.M.R. Ch. 1, § VII(A)(3) ("Formal rules of evidence shall not be observed"), and instead allow for a much broader range of evidence that would otherwise be excluded from a court of law, *see, e.g.*, 10-144 C.M.R. Ch. 1, §VII(A)(5)("Hearsay evidence shall not be excluded because of its hearsay nature"). On this basis alone, Dr. Ross' contention that the Hearing Officer improperly relied upon the summary tables fails. But even if the Hearing Officer were required to rely on the Maine Rules of Evidence, the court would still disagree with Dr. Ross. The Rules of Evidence give courts considerable leeway in deciding what types of summaries to admit. *See, e.g.*, *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (explaining that Rule 1006 is "broadly interpreted").

## De Novo Review – The Electronic Documents

Dr. Ross next argues that the Hearing Officer did not independently evaluate the evidence, and instead gave too much deference to the initial audit findings. In other words, he essentially argues that the Hearing Officer failed to conduct a *de novo* review, as is statutorily required. *See* 22 M.R.S.A. § 42(7)(D) ("The hearing officer shall conduct a hearing de novo on issues raised in the notice of appeal filed by the provider...."). Although this argument is presented in a separate section of Dr. Ross's brief, it also permeates throughout his brief, as he alleges that the Hearing Officer's failure to properly conduct the hearing *de novo* meant that Janie Turner's initial audit, and her notes of that audit, was given far too much deference, and that his evidence was not given proper weight.

The Law Court has elaborated on the usage and meaning of *de novo* in the context of an agency hearing:

> When a Board holds a hearing de novo, it does not examine evidence presented to the decision maker or tribunal below, nor does it review the procedure below except to assure that the matter is properly before it. Instead, it looks at the substantive issues afresh, undertakes its own credibility determinations, evaluates the evidence presented, and draws its own conclusions. Thus, in the absence of an explicit ordinance creating a purely appellate review by the Board, the function of the Board is to take evidence, make factual findings, and apply the laws and ordinances to the petition or application at issue, and to do so independently of the decision, if any, of a lower tribunal.

*Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773; *See also Zablotny v. State Bd. of Nursing*, 2014 ME 46, ¶ 29, 89 A.3d 143 (holding that "de novo

6

judicial review" means that the fact-finder "does not examine the evidence presented to the decision maker or tribunal below," but instead "looks at the substantive issues afresh, undertakes its own credibility determinations, evaluates the evidence presented, and draws its own conclusions") (quoting *Stewart*, *supra*).

To the extent that Dr. Ross makes a generalized claim that the Hearing Officer did not conduct a *de novo* hearing because she gave too much "deference" to the Department's evidence as opposed to his, the court rejects that argument. The court has closely scrutinized the administrative record in its entirety and has reviewed the Hearing Officer's Recommended Decision numerous times. The court is satisfied that the Hearing Officer properly exercised her independent judgment in evaluating the evidence and testimony presented at the administrative hearing.

The assertion that the Hearing Officer failed to conduct a *de novo* hearing is primarily focused on her treatment of electronic records Dr. Ross offered at the administrative hearing, but failed to produce for the initial audit or at the informal review. These electronic documents were records for 100 patients that Ross sought to admit at the administrative hearing to show that: the services he provided to the patients were medically necessary; his patient records did, in fact, contain his electronic signature, and; the electronic records essentially cured the otherwise illegible and indecipherable records he produced for the initial audit and informal review. Because Dr. Ross did not submit these electronic records until November

7

2016, shortly before the formal administrative hearing originally scheduled for November 28, 2016 in South Paris, and well after both the initial audit and the informal review, DHHS did not review them and, more importantly, the Hearing Officer ruled that she was unable to consider them as well. The Hearing Officer concluded that she was constrained by the MaineCare Benefits Manual, which states that "[s]ubsequent appeal proceedings will be limited only to those issues raised during the informal review process." 10-144 C.M.R. Ch. 101, sub-Ch. 1, 1.23-1(A).

The Hearing Officer admitted the electronic records into the record, but "counseled the Department that it should argue how much evidentiary weight, if any the hearing officer should provide these records." (CR-001140). The Department objected to any consideration of the electronic records, arguing that their production for the first time prior to the administrative hearing was not permitted by the MaineCare Benefits Manual (Manual), and constituted a waiver of their use before the Hearing Officer. The Hearing Officer addressed the question of the electronic records in multiple contexts, which the court will now review.

## A. Illegible Records

The Department assessed a 100% recoupment against Dr. Ross in those circumstances where his patient records were so illegible as to provide no information about the medical necessity for the services he provided or even what the services were. In short, the Department maintained that the documents submitted

by Ross were so illegible as to be tantamount to no documentation at all. Ross argued before the Hearing Officer that the electronic records should be considered in the *de novo* hearing and, when considered by the Hearing Officer in combination with the paper records and his testimony at the hearing, the medical necessity of the services rendered was adequately shown.

As a factual matter, the Hearing Officer found that the illegible records were "indecipherable and hence did not reveal what services were provided and whether the services were medically necessary." (CR-001141). She then concluded that the Department was correct to impose a 100% recoupment for those cases where the records were illegible. *Id.*

With respect to her consideration of the electronic records, the Hearing Officer relied upon Chapter 1, §1.21(A) of the Manual (CR-402) for her determination that the *de novo* appeal before her was to "be limited only to those issues raised during the informal review process. Therefore, the hearing officer is barred from reviewing the electronic records when the Department did not review them or cite them in the informal review." (CR-1141). She ultimately concluded:

> In addition, while Dr. Ross testified at hearing as to several patients in this category (and was permitted to make an offer of proof in regards to others (See Ross-112)), the fact that, in order for the records to be legible required not only the review of the electronic records and his explanation, reveals that the documents submitted by Dr. Ross for the audit were deficient and violated both Chapter II, §25-06-1(A) and the MaineCare Provider Agreement.

9

*Id.*

Dr. Ross contends that the Hearing Officer was required to admit and consider the electronic records because 22 M.R.S. § 42(7)(D) provides that she "shall conduct a hearing de novo on issues raised in the notice of appeal filed by the provider . . . ." The Notice of Appeal filed by Dr. Ross on October 4, 2016 is not particularly enlightening as it merely states that he is "requesting an administrative hearing on this matter." (CR-16). Moreover, the Order of Reference dated October 17, 2017 framed the issue to be addressed in the *de novo* appeal to be:

> Was the department correct when it determined for the review period from 2/1/2008 through 12/31/2012, Bruce Ross, DMD breached the terms of the MaineCare Provider/Supplier Agreement, and/or the requirements of Section 1.03-3 for provider participation, as specified in the Final Informal Review Decision dated August 9, 2016, resulting in a recoupment of $216,371.06 owed to the department?

(CR-13).

Dr. Ross is certainly correct, and the Department agrees, that 22 M.R.S. § 42(7)D) requires the appeal before the Hearing Officer to be a *de novo* proceeding. The Hearing Officer herself explicitly recognized this in her Recommended Decision. (CR-1141). Section 42(7) also directs the Department, however, to amend the rules governing the appeals of informal review decisions "that seek to impose repayment, recovery or recoupment obligations or sanctions or fines on providers. . . ." One such rule is Chapter 1, Section 1.21 (General Principles), which provides in pertinent part: "Issues that are not raised by the provider, individual, or entity

through the written request for an informal review <u>or the submission of additional materials for consideration prior to the informal review are waived in subsequent appeal proceedings</u>." (CR-402).

It is undisputed that Dr. Ross never produced the electronic records until November 2016, well after the issuance of the Informal Review Decision. Furthermore, his letter to Herbert Downs requesting an informal review did not suggest the existence of any electronic records. (CR-174). Dr. Ross, did, in fact, provide records upon the request of Janie Turner as part of the initial audit and prior to the issuance of the Notice of Violation. (CR-1188). After the Notice of Violation had been issued, Ms. Turner personally spoke to Dr. Ross and informed him that he had 60 days to request an informal review and that he should submit any additional records or documentation he wanted to be considered during the informal review that would tend to support the MaineCare claims he had filed. Ms. Turner called Dr. Ross a second time to make sure he understood that he could file additional materials for the informal review. (CR-1204-05). Dr. Ross did provide further documentation for the informal review, but did not submit or mention any electronic records. (CR-1206-07).

In light of the clear language of the Manual that issues not raised through the submission of additional materials for consideration prior to the informal review are waived in later appeal proceedings, the decision of the Hearing Officer not to

consider the newly produced electronic records was not clearly erroneous or an abuse of discretion.

The fact that Dr. Ross was unrepresented by counsel during the initial audit and the informal review proceedings does not change this result. *See Gallagher v. Penobscot Cmty. Healthcare*, 2019 ME 88, ¶ 15, 209 A.3d 106 *quoting Richards v. Bruce*, 1997 ME 61, ¶ 8, 691 A.2d 1223 ("[Pro se litigants are held to the same standards as represented litigants.").

## B. Electronic Signatures

After the initial audit and the informal review, the Department assessed a 20% recoupment for Dr. Ross' documentation that failed to contain his required signature. The Hearing Officer recommended that the Acting Commissioner uphold this recoupment. Nevertheless, in her Final Decision, the Acting Commissioner reduced the recoupment to 1%. On appeal to this court, Dr. Ross contends that the Hearing Officer (and ultimately the Acting Commissioner) committed legal error and acted arbitrarily and capriciously by falling to find that the electronic records he produced for the *de novo* administrative hearing contained the necessary signatures. In particular, Dr. Ross maintains that the electronic signatures in the belatedly produced electronic records complied with the Manual and the Uniform Electronic Transactions Act – 10 M.R.S. § 9407(1)(A).

With respect to this issue, it appears to the court that the Hearing Officer did, in fact, consider the electronic records, but determined that the electronic signatures offered by Dr. Ross did not satisfy the requirements of the MaineCare benefits Manual. Specifically, the Hearing Officer found:

> The hearing officer agrees with the Department that any "electronic" signature that Dr. Ross used does not meet the specifications of the MaineCare Benefits Manual. According to Chapter 1, § 1.03-3(N), providers must adhere to certain requirements when using an electronic signature. The Department is correct that the electronic records do not necessarily identify the correct individual (there is no dispute that Dr. Ross examined the patient at the Dental Hygienist's work station), that the Department has no signature on file, and there is no time indicated on the records.

(CR-1144).

Because the alleged electronic signatures submitted by Dr. Ross failed to meet the requirements of the Manual, the Hearing Officer was not clearly erroneous, nor was she arbitrary or capricious, in concluding that they were not in compliance and could not qualify as an appropriate electronic signature for purposes of the Manual.

**Penalties Imposed**

Dr. Ross next argues that the recoupment the Department sought was largely unsupported by substantial evidence in the whole record. In particular, Dr. Ross contends that DHHS submitted evidence of only a handful of actual overpayments; that DHHS charged the wrong percentage for certain penalties, and; that DHHS

13

demanded recoupment for overpayments it had already recouped. The court addresses each argument in turn.

## DHHS submitted evidence of only a handful of actual overpayments

Dr. Ross asserts that DHHS submitted evidence of only 13 charges and claims for recoupment. He alleges that this is the only evidence DHHS brought against him, and that this evidence fell far short of establishing the full $42,971.69 recoupment amount, since those 13 charges amount to only $519.00. This argument is similar to his theory, previously discussed, that the Hearing Officer impermissibly relied upon the summary spreadsheet – here, he argues that even if the summary spreadsheet was properly admitted before the Hearing Officer, it could not have established more than the $519.00 in recoupment claims.

Like Dr. Ross' first argument, this argument ignores the basic purpose behind Rule 1006 of the Rules of Evidence. *See* M.R. Evid. 1006; *see also State v. Huff*, 157 Me. 269, 276, 171 A.2d 210, 214 (1961) ("In this connection it is noted that courts quite uniformly permit relaxation of the best evidence rule where records are voluminous and involve intricate details so that an inspection thereof would seriously and unnecessarily delay and inconvenience the court and jury."). As noted above, the Department's full spreadsheet of all claims for recoupment against Dr. Ross totaled 139 pages, each page with roughly 10 separate claims and accompanying notes. It can hardly be said that 139 pages is insufficiently

14

voluminous to seriously and unnecessarily delay the hearing, and it was well within the Hearing Officer's discretion to allow DHHS to submit a summary table giving only a representative sample of the recoupment claims against Dr. Ross. Even more importantly, and as noted above, the DHHS regulations specifically note that administrative hearings before the Hearing Officer are not subject to any formal rules of evidence, meaning it is even more within the Hearing Officer's discretion to decide what evidence to consider and the weight to be accorded that evidence. The court cannot say that it was an abuse of discretion for the Hearing Officer to rely on the spreadsheet to find for the full recoupment amount ordered by the Acting Commissioner.

It was legally erroneous for the Department to charge a 100% recoupment penalty on certain charges

Dr. Ross argues that it was legal error for the Hearing Officer to allow DHHS to recoup 100% of certain payments DHHS made to Ross, because the regulations allow for only up to a 20% recoupment. The Manual provides:

> **H.** Imposition of penalty due to lack of adequate documentation. When the Department proves by a preponderance of the evidence that a provider has violated MaineCare requirements because it lacks mandated records for MaineCare covered goods or services, the Department in its discretion may impose the following penalties:
>
> > **1.** A penalty equal to one hundred percent (100%) recoupment of MaineCare payments for services or goods, if the provider has failed to demonstrate by a preponderance of the evidence that the disputed goods or services were

15

> medically necessary, MaineCare covered services, and actually provided to eligible MaineCare members.
>
> **2.** A penalty not to exceed twenty-percent (20%), if the provider is able to demonstrate by a preponderance of the evidence that the disputed goods or services were medically necessary, MaineCare covered services, and actually provided to eligible MaineCare members. The penalty will be applied against each MaineCare payment associated with the missing mandated records.

10-144 C.M.R. Ch. 101, sub. Ch. 1, 1.20-2(H). Dr. Ross maintains that he was able to demonstrate by a preponderance of the evidence that the relevant recoupment claims were for services that were medically necessary, and that DHHS nonetheless imposed a 100% penalty. In addition to the illegible office records noted above, Dr. Ross also attempted to introduce the electronic records the Hearing Officer declined to consider, to show that these procedures were medically necessary. The court has already concluded that the Hearing Officer did not commit legal error by deciding she was not permitted to consider the electronic records that were never submitted prior to the issuance of the informal review decision. Dr. Ross also contends, however, that his and Ms. Leavitt's testimony before the Hearing Officer established that these charges were for medically necessary procedures. Dr. Ross claims that, had the Hearing Officer properly taken this evidence into consideration, he would have undoubtedly met his burden of demonstrating that the charges were for medically necessary services and, as a result, could not be penalized more than 20% of those charges.

16

The court disagrees with Dr. Ross' characterization of the Hearing Officer's review of the evidence he presented. While the court agrees that the Hearing Officer was required to conduct the hearing *de novo*, such a review does not require the fact-finder to give the same weight to all pieces of evidence. Indeed, a *de novo* hearing compels the fact-finder to independently decide how much weight to assign to any item of evidence. *Cf. Zablotny*, 2014 ME 46, ¶ 29 ("[de novo review] obligates the court to hear the evidence presented, independently evaluate the testimony offered, make its own credibility determinations, and reach its own decision…."). The court does not find that the Hearing Officer simply ignored the evidence that Dr. Ross presented, *with the exception of the electronic records*. Rather, the Hearing Officer's recommendation shows that she did not find his evidence to be persuasive. Given that his evidence in this instance amounted to testimony from him and from Ms. Leavitt, along with documents that were so illegible as to constitute "no documentation," it is not surprising that the Hearing Officer decided this way. Indeed, since it was Dr. Ross's burden to demonstrate that the services provided were medically necessary, the court views his failure to persuade the Hearing Officer as being a product of his lack of sufficient evidence, rather than a failure to conduct the hearing *de novo*.

17

<u>DHHS demanded recoupment of overpayments it had already recouped</u>

Dr. Ross argues that legal error was committed when the Department sought recoupment of overpayments that it had previously recouped. Although Dr. Ross and Ms. Leavitt testified before the Hearing Officer about this, Dr. Ross was unable to provide any documentary evidence to support this assertion, aside from the electronic records noted above. Dr. Ross argues that because DHHS produced no contrary evidence, it was arbitrary, capricious, and unsupported by substantial evidence on the whole record to find that he had not already returned these payments. As with Dr. Ross' prior argument, this argument fails because it was his burden to demonstrate that DHHS was seeking double recoupment. Even if DHHS presented no evidence to the contrary, Dr. Ross himself was unable to produce any documentary evidence, and offered only his and Ms. Leavitt's testimonies to suggest that he met his burden. The Hearing Officer was not persuaded by this testimony, and the court cannot substitute its judgment for the Hearing Officer's on questions of fact. The court finds that Dr. Ross failed to persuade the Hearing Officer, not because she "completely discounted" his evidence, but instead because he failed to meet his burden of persuasion.

**Lack of Independent DHHS Review**

Dr. Ross next argues that the informal review process was conducted in a biased manner that was inconsistent with the Department's own rules and, therefore,

18

his failure to provide evidence during the informal review process must be excused. Dr. Ross claims that, instead of Herbert Downs performing the informal review, it was Janie Turner who actually conducted the informal review, and Mr. Downs did nothing more than sign off on Turner's work. Because Ms. Turner was the DHHS employee who conducted the initial audit, Ross points to the MaineCare Benefits Manual, which provides that the informal review "will be conducted by the Director of MaineCare Services, or other designated Department representative who was not involved in the decision under review." 10-144 C.M.R. Ch. 101, sub. Ch. 1, 1.23-1. Ross, however, has not provided any evidence that this occurred. Indeed, his brief points to no record evidence whatsoever, meaning that this claim acts as little more than an unsubstantiated assertion. Furthermore, the MaineCare Rules do not require that the employee who conducted the initial audit be completely "walled off" from the subsequent informal review. There is nothing that prohibited Mr. Downs from seeking Ms. Turner's advice and expertise in conducting his own review; to conclude otherwise would require Mr. Downs to seek the assistance of another staff employee who would need to duplicate the work that Ms. Turner already performed. *See Palian v. DHHS,* Ken. Docket No. AP-18-49 (May 17, 2019) (Stokes, J.). Because the MaineCare Rules do not plainly compel a contrary result, *Downeast Energy Corp. v. Fund Ins. Review Bd.,* 2000 ME 151, ¶ 13, 756 A.2d 948, it was not an error of law for Ms. Turner to provide staff support during the informal review

19

process and to draft the informal review decision, which was ultimately conducted and approved by Mr. Downs.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED and the decision of the Department of Health and Human Services is AFFIRMED.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: November 12, 2019

William R. Stokes
Justice, Superior Court

Entered on the docket 11/12/19

20